Rohlf *v.* The Great American Mutual Indemnity Co. et al.

(Decided November 14, 1927.)

*Messrs. Young & Young,* for plaintiff in error.
*Mr. C. H. Workman* and *Mr. E. G. Martin,* for defendants in error.

Richards, J. The plaintiff was injured on August 6, 1922, in a collision between two automobiles, while he was riding as a guest with his friend, A. C. Chapman, in Chapman's car. Chapman held indemnity insurance in the defendant company pro-

tecting him from such liability as was within the terms of the policy. Thereafter Rohlf brought an action against Chapman for the injuries suffered, and recovered a verdict and judgment of $1,500. The judgment not being satisfied, he brought this action against the company on the indemnity policy issued by it. A jury being waived, the case was tried to the court, a judgment was rendered for the defendant, dismissing the petition, and this proceeding in error is brought to secure a reversal of the judgment.

The main defense upon which the indemnity company relied is based on the claim made by it that the assured willfully failed to co-operate and assist it in making a defense to the original action brought by Rohlf. The provision of the policy covering this matter is Section 2, par. 2, which reads as follows:

"(2) *Co-operation of the assured.* Whenever requested by the company, the assured shall aid in effecting settlement, securing information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times render all possible co-operation and assistance. The assured shall not voluntarily assume any liability, or interfere in any negotiations for settlement, or in any legal proceeding, or incur any extra expense, or settle any claim, except at assured's own cost, without the written consent of the company, previously given. The company reserves the right to settle any such claim or suit brought against the assured."

The policy also contained a provision relating to defending actions brought against the assured, reading as follows:

"In conjunction only with coverages granted

under clauses A and/or B of this section the company .does' hereby agree to investigate all accidents covered by this policy and to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, for damages suffered or alleged to have been suffered on account of the bodily injuries and/or death and/or the damage to or the destruction of property as set forth in this section.''

The plaintiff in his reply avers that the company appeared in open court and defended the action and offered evidence in defense upon the matters set forth in the answer in that case, and filed in that case the answer of A. C. Chapman, and is thereby estopped from asserting any of the claims made in its answer in this case.

The record discloses that, after the collision, Chapman notified the company thereof. No action was brought by Rohlf against Chapman on account of the collision until May 6, 1924, one year and nine months after the collision. Chapman made no defense to that action. The company had, in the meantime, made diligent search for Chapman in Willard, Cleveland, Lorain, and Toledo, finally ascertaining, on February 4, 1925, that he was in Toledo. On February 7, 1925, the company filed an answer on behalf of Chapman in that action, the answer being verified by one of the attorneys, for the reason, as stated in the verification, that the defendant was absent from Huron county. Immediately on ascertaining the whereabouts of Chapman in Toledo on February 4, 1925, the company obtained a written statement from him detailing the circumstances of the collision in which Rohlf was injured. In that

statement, Chapman asserted that he himself was nowise at fault, and that the driver of the other car was entirely at fault for the collision, in that, while Chapman was on the right side of the road, the driver of the other car turned his car across the road and headed into the Chapman car. The company also procured from Chapman, on February 4, 1925, a signed statement to the effect that, although the indemnity company disclaimed liability, it was to investigate and defend against the claim with the understanding that it reserved the right to be liable only for the risks assumed by its policy, to which reservations Chapman agreed in the writing.

On February 16, 1925, counsel for the company sent Chapman a registered letter, directed to him at the residence he gave in Toledo, and reminding him of the pendency of the action. This letter contains the following statement:

"The issue has been made up in the case, and is liable to come on for trial most any day, and up to the present time we have had no assistance from you. If you will take your policy and examine it, you will see that you agreed to assist the Great American in making any defense, in gathering the testimony and making preparations for the trial, and assisting us at the trial in the trial of the case.

"I say, so far you have given us no assistance whatever, and this letter is to notify you that you must come to Mansfield at once, so we can have a conference with you, and to know what witnesses you want at the trial, and otherwise help us to get ready to make the defense."

Chapman made no response to this letter. On

March 30, 1925, counsel sent him another registered letter, in which the following language occurs:

"You did not comply with my request and up to date you have not given us any assistance in the preparation of this case.

"The case is set down for trial and will be tried on Thursday, of this week, April 2d, at 9 o'clock a. m., at the courthouse in the court of common pleas of Huron county. I shall be present and make what defense I can. I will be in Norwalk on Wednesday evening at 7:30 in the office of Edgar G. Martin, prosecuting attorney of Huron county, and you ought to meet me at the office and let us have the benefit of your evidence and your assistance the next day in the trial of the case.

"This is the last notice I shall give you with regard to the trial of said cause."

Chapman made no response to this communication, and was not present at the trial, which commenced on April 2, 1925. His excuse is that he had left Toledo and located in Lorain, and did not receive the letters until too late to attend the trial, but he had not given the company any notice of his change of address, and a receipt for the registered letters had been returned to the company, signed by his representative.

Chapman was not present at the trial of the instant case, but the decision of the case was delayed, and his deposition was taken. The company apparently had not been able to find him, but the plaintiff ascertained that he was in Florida, and was advised of his return to Norwalk, and the plaintiff took his deposition, and it was introduced in evidence. In that deposition Chapman states that he

never notified the insurance company that he had been sued by Rohlf, although he knew that the policy required that he should do so, and he further stated that he thought Rohlf should be paid. In the deposition he was asked this question, referring to Rohlf:

"Q. As long as he can't get it from you, you think he ought to get it from the insurance company, don't you? A. Well, I think so."

He further testified as follows:

"Q. Did you tell one of their investigators that you would keep the office in touch as to where you were, so they could get you at any time? Did you say that to one of the men? A. Yes, sir.

"Q. You didn't do it, did you? A. No.

"Q. And, after you got this notice of the trial, you never told them that you got the message, or where you were, or anything, did you? A. No, sir.

"Q. You never co-operated, have you — outside of notifying them of the accident? A. No, sir.

"Q. You had told them that you would let them know where you were all the time, and where they could get you if they wanted you, didn't you? A. Yes.

"Q. You didn't tell the insurance company where you were, did you? A. No, sir.

"Q. Yet you had promised you would, to the man? A. No, sir."

This last answer is so plainly inconsistent with numerous statements made by the witness that it is either a clerical error or a willful misstatement. Later on in the deposition he was asked this question:

"Q. And Mr. Young is your attorney, and he was Mr. Rohlf's attorney? A. Yes, sir.

"Q. You say Mr. Young was your attorney, in your last case? A. Yes, sir."

The trial judge, on request, made a special finding of facts, which includes the following finding:

"The court further finds that the defendant A. C. Chapman did not co-operate with or assist the defendant corporation in securing information and evidence regarding the claim of the plaintiff against him, or in the attendance of witnesses or in the attendance of defendant Chapman himself at said trial; that he did not notify the defendant company of the pendency of plaintiff's suit against him, nor did he at any time advise the defendant company of his post office address or place of residence, and that the same was changing frequently, and that letters addressed to him by said company were not answered by him, nor did he conform to any of the requests made in such letters that he go to Mansfield to confer with said company regarding said claim or appear at the trial of said law suit, although it does not appear that he received actual notice of the date of such trial, owing to the fact that he had changed his address, and the letter of notice from the defendant company to him did not reach him until after such trial had been had."

We think the finding of the trial court is sustained by the overwhelming weight of the evidence. Indeed, it is impossible to read the record in this case without finding that there was deliberate and premeditated evasion on the part of Chapman of the duties he owed to the company to co-operate in the defense, as required by the provisions of the policy.

The evidence points very strongly to collusion between Chapman and his friend Rohlf to enable Rohlf to collect the amount of the claim from the indemnity company. We may concede that the company did not have the right to require him to come to Mansfield from Toledo, but it did have the right to his assistance and co-operation. If the accident happened under the circumstances stated by Chapman when interviewed in Toledo, there was a perfect defense to the claim made by Rohlf.

It is said that the company ought not to have proceeded to trial, in the absence of Chapman, but there is no assurance that an attempt at a continuance of the case would have been successful. At most, the failure to attempt to secure a continuance was an error of judgment, and does not evince in any way bad faith on the part of the company. On the other hand, the evidence shows bad faith on the part of Chapman in failing to co-operate, as he had agreed, and in thus wrongfully attempting to shoulder the liability on the company. We find nothing in the case showing a waiver or estoppel to make this defense.

Certainly the liability assumed by the company is limited by the terms of its policy, and Rohlf can have no greater right than Chapman himself had. The case must be determined against the plaintiff, because the assured is clearly shown to have violated the provisions of the policy requiring him to co-operate and assist in the defense. *Schoenfeld* v. *New Jersey Fidelity & Plate Glass Ins. Co.,* 203 App. Div., 796, 197 N. Y. S., 606; *Coleman* v. *New Amsterdam Casualty Co.,* 126 Misc. Rep., 380, 213 N. Y. S., 522; *United States Fidelity & Guaranty*

*Co.* v. *Williams,* 148 Md., 289, 129 A., 660; *Bassi* v. *Bassi,* 165 Minn., 100, 205 N. W., 947; *Oakland Motor Co.* v. *American Fidelity Co.,* 190 Mich., 74, 155 N. W., 729.

The petition in error and the brief complain only of the rendition of the judgment in favor of the Great American Mutual Indemnity Company.

For the reasons given, the judgment must be affirmed.

*Judgment affirmed.*

LLOYD, J., concurs.

WILLIAMS, J., dissenting. The defendant insurance company defends on the ground that the failure of insured to co-operate worked a rescission and discharge of the policy.

In a suit by a judgment creditor to recover against the insurance policy, under Section 9510-4, General Code, the terms of the policy that are binding upon the insured are likewise binding upon the judgment creditor. *Stacey* v. *Fidelity & Casualty Co.,* 114 Ohio St., 633, 151 N. E., 718. The policy contained a clause requiring the insured to co-operate with the insurer in making defense against damage claims, and the court below held that, because the insured did not so co-operate, the plaintiff could not recover. The only manner in which it could be reasonably claimed the insured did not co-operate was in his failure to attend the trial in the action for damages. Under the undisputed evidence, the insured did not have any notice of the trial until at least two days after it was completed. The manner in which it was claimed he did not co-operate was in not giving notice of his whereabouts. The insur-

ance company knew that his address had been at the Spot Restaurant, 1202 Yondota street, Toledo, Ohio. Under the undisputed evidence, he told the representative of the insurance company that he would keep the office in touch as to where he was, so that they could get him at any time. This he evidently did to the extent of keeping the people at his address in Toledo informed of his whereabouts, as a letter addressed to that point followed him to Lorain, where he was at the time of the trial.

Assuming that there was enough evidence to warrant the court, a jury having been waived, in finding that the insured failed to co-operate, there is still another vital question involved in the case. The insurer agreed to defend the action for damages "in the name and on behalf of the insured." The damage case was assigned for trial in the common pleas court for Thursday, April 2, 1925. On the Monday before, the attorneys for the insurance company, who were also the only attorneys appearing for the insured at the trial, wrote a letter addressed to the insured's Toledo address, which the insured did not receive until two days after the trial was completed. The letter was registered, and a return receipt demanded. This return receipt was mailed back to the sender three days after the trial had been completed. The attorneys, therefore, knew the letter had not been delivered. They were attorneys for the insurer as well as the insured, and they made no further effort to get the insured by telephone or by process of court, and made no application for a postponement of the trial, nor any application for a continuance. In fact, it does not appear that any information was given to the trial

judge relative to the situation. The attorneys owed both of their clients the obligation of fidelity, and, if it was necessary to the proper defense of the action to have the defendant present, in order to make proper defense, surely counsel were in default in not further endeavoring to procure his attendance, and were therefore in default in bringing about the lack of co-operation on the part of the insured.

The principle applicable is well stated in 13 Corpus Juris, p. 614, Section 662:

"(2) *Party Rescinding must not be in Default.* A party who is himself in default of performance cannot rescind. The party seeking rescission must be willing and in a position to perform his part of the agreement. So where the contract is entire and performance by one party is a condition precedent to recovery on his part, he cannot rescind because payment for part performance is refused, although it would seem that where both parties are in default at the time for performance the contract is *ipso facto* dissolved. Where both parties are in default and each seeks to assert the contract as against the other, it will not be regarded as terminated, and one party will not be permitted by his breach to create a condition which will tend to bring the other party into default and then assert that such party's rights are forfeited by a default so caused. Where one party has waived full performance by the other, such other is not entitled to assert such fact as a ground for rescission."

The insurance company, through its agents or attorneys, should not be permitted to bring about the lack of co-operation by its own default, and then

avoid liability under the policy by reason of such claim of lack of co-operation. As to the facts bearing upon the question of the default of the insurance company through its agents and attorneys, there is no dispute, and the writer is of the opinion that upon this ground the trial judge would have been required to have directed a verdict in favor of the plaintiff for the amount of the judgment and interest had there been a jury, and that he erred in not making a finding accordingly, a jury having been waived, and entering judgment thereon, and that this court should now reverse the judgment of the court below, and enter final judgment in favor of the plaintiff in error.