## Richmond

### State Farm Mutual Automobile Insurance Company

### v.

### Dixie K. Davies, et al.

December 2, 1983.

Record No. 810486.

Present: All the Justices.

John G. Crandley (E. Page Preston; Preston & Wilson, on brief), for appellant.

Alan B. Rashkind (Richard A. Saunders; Furniss, Davis and Rashkind, on brief), for appellees.

No brief or argument for Dixie K. Davies, appellee.

CARRICO, C.J., delivered the opinion of the Court.

This appeal in a declaratory judgment proceeding involves the conceded breach of the cooperation clause of an automobile liability insurance policy and presents the question whether the breach prejudiced the insurance carrier in its defense of an action for damages. The question is presented against the following background:

On August 2, 1974, Dixie K. Davies was injured when the vehicle she was driving collided with an automobile operated by Patricia Ann Turner. At the time, Turner was an insured under a policy issued by State Farm Mutual Automobile Insurance Company (State Farm), containing the usual cooperation clause, and Davies was an insured under a policy issued by Government Employees Insurance Company (GEICO), with standard provisions for uninsured motorist coverage.

Davies filed a personal injury action against Turner, who delivered the suit papers to State Farm. When the case came on for trial, Turner failed to appear, and State Farm defended the action under a reservation of rights.

The trial resulted in a verdict and judgment in favor of Davies for $10,725.00. Thereafter, the judgment remaining unpaid, Davies brought this declaratory judgment proceeding to determine which of the two insurance companies was liable to her. State Farm disclaimed liability on the ground that Turner's failure to appear at trial constituted a material and prejudicial breach of the cooperation clause of the State Farm policy. GEICO defended on the basis that State Farm's disclaimer of liability was ineffective and, hence, that Turner was not an uninsured motorist.

After a hearing, the trial court ruled that State Farm had not been prejudiced by Turner's failure to appear at trial. Accordingly, the court entered judgment in favor of Davies against State Farm and dismissed GEICO. Because we believe these actions were erroneous, we will reverse.

■ Under the terms of State Farm's policy, Turner was required to "cooperate with the company and to . . . attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses." Pursuant to Code § 38.1-381 (a1), however, an insurance carrier cannot escape liability on the ground of noncooperation unless the failure to cooperate "prejudices the insurer in the defense of an action for damages."

■ The parties stipulated below that Turner failed to cooperate as required and that State Farm had not waived its right to rely upon the defense of noncooperation. The only issue for determination, therefore, the parties agreed, was whether Turner's failure to cooperate prejudiced State Farm in the defense of Davies' personal injury action.

On this issue, the trial court properly held that State Farm had the burden of proving prejudice. *See Shipp* v. *Connecticut Indem. Co.*, 194 Va. 249, 258, 72 S.E.2d 343, 348 (1952). The court found, however, that the "evidence of liability [in the personal injury action] was rather overwhelming and it would stretch the imagination to believe that a different result would have been obtained."

GEICO argues that the importance of this finding of fact "cannot be overemphasized" and that the finding may not be set aside since it is supported by credible evidence. The difficulty with

GEICO's argument is that the so-called "finding of fact" contains a built-in rule of law imposing upon State Farm the burden of proving that Turner's appearance and testimony at trial *would* have produced a different result. We believe this was an improper burden, and we think one of our prior decisions demonstrates the error in the trial court's holding. For this reason, we need not consider the several out-of-state decisions cited by GEICO.

In *Cooper v. Insurance Company*, 199 Va. 908, 103 S.E.2d 210 (1958), Traynham, an insured under a policy issued by Employers Mutual Automobile Insurance Company, was involved in an accident with Cooper. Traynham notified the insurance company of the accident and gave it a signed statement concerning the details of the incident. Thereafter, Traynham disappeared and failed to cooperate further with the company. Cooper obtained a judgment against Traynham in a personal injury action which the company defended under a reservation of rights. When Cooper brought an action on the policy, the company defended on the ground of Traynham's noncooperation. Affirming the trial court's finding in favor of the company, we said:

> [Traynham] did not assist in any manner in the preparation for trial nor did he appear at the trial. These facts and circumstances constituted a wilful lack of cooperation with the company and such lack of cooperation was substantial and material and was prejudicial to [the company]. His failure to assist in the preparation for trial and to attend the trial unquestionably prejudiced his case, especially in view of the fact that his report of the accident . . . indicated a defense to the action.

*Id.* at 915, 103 S.E.2d at 215.

GEICO dismisses *Cooper* on the ground that the language concerning prejudice quoted above "is unquestionably dictum." Prejudice was not an issue in *Cooper*, GEICO says, because the case predated a 1966 amendment adding to Code § 38.1-381 new subsection (a1), which included the prejudice requirement, and, as this court was careful to point out, it was not necessary at the time of *Cooper* for the insurer "to show prejudice in order to prevail in the defense of non-cooperation." 199 Va. at 915-16, 103 S.E.2d at 215.

It is true, of course, that subsection (a1) had not been added to Code § 38.1-381 at the time *Cooper* was decided. And we did make clear in *Cooper* that a showing of prejudice was not essential at that time to the establishment of a noncooperation defense, the insurer's burden then consisting of proof that a breach was material. 199 Va. at 914, 915, 102 S.E.2d at 214, 215. But it does not follow that the language concerning prejudice in the above-quoted excerpt is dictum.

We noted in *Cooper* that the issue in the case was whether the evidence showed that Traynham willfully failed to comply with the terms of the policy "in some substantial and material respect." *Id.* at 913, 103 S.E.2d at 214. And, quoting from *Shipp*, we said that " 'the absence of prejudice . . . is a circumstance to be considered on the question of . . . materiality.' " *Id.* at 914, 103 S.E.2d at 214. Then, rationalizing conversely, we found that Traynham's failure to cooperate was material because prejudicial to the insurer in the defense of the personal injury action. Hence, the language concerning prejudice was essential to the rationale of the *Cooper* decision and was not dictum.

GEICO argues that in view of the 1966 amendment to Code § 38.1-381, *Cooper* would be decided differently today. We disagree. So far as its impact upon *Cooper* is concerned, what the 1966 amendment accomplished was to require a showing of prejudice as the dispositive factor in a failure-to-cooperate case, rather than as a mere circumstance to be considered in determining materiality. *See State Farm* v. *Porter*, 221 Va. 592, 597-98, 272 S.E.2d 196, 199 (1980). But prejudice is prejudice, whether found as a dispositive factor or as a circumstance demonstrating materiality; therefore, the precedential value of *Cooper* is unaffected by the 1966 amendment.

GEICO maintains, however, that *Cooper* is not entitled to weight because this Court did not discuss what constitutes prejudice in the noncooperation context. We should disregard *Cooper*, GEICO says, and also eschew State Farm's invitation to follow a rule that would make "the absence of an insured from trial prejudice *per se*." Instead, GEICO submits, we should affirm the judgment below, thus sanctioning the rule followed by the trial court requiring an insured to prove prejudice by showing that the insured's appearance at trial would have produced a different result. Alternatively, GEICO asserts, we should adopt a rule requiring the insurer to show "substantial likelihood that the trier of

fact would have found in the insured's favor" or, at a minimum, a rule requiring the insurer to show "some likelihood that the result would have been different."

Admittedly, *Cooper* does not discuss the nature of the evidence that is required to establish prejudice. It is clear from the opinion, however, that where the insured's willful absence from trial deprives the insurer of evidence sufficient to establish a defense to the original claim, then prejudice results. And we believe it is implicit that evidence necessary to establish a defense means evidence of sufficient quality and weight to take the issue of the insured's conduct to the jury and to support a verdict in his or her favor.

It follows that we favor neither a *per se* rule that would permit an insurer to show merely that its insured failed to appear at trial nor a rule that would require an insurer to show that, had its insured appeared, the result would have been in his or her favor. Instead, we believe that the proper rule lies midway between these two extremes and emanates from the rationale of *Cooper*: in an action on the policy, when the insurer shows that the insured's willful failure to appear at the original trial deprived the insurer of evidence which would have made a jury issue of the insured's liability and supported a verdict in his or her favor, the insurer has established a reasonable likelihood the result would have been favorable to the insured and has carried its burden of proving prejudice under Code § 38.1-381(a1).

To determine whether State Farm carried its burden of proving prejudice, we turn now to the evidence adduced in the present proceeding. This evidence, most of which was stipulated, shows that the accident in question occurred on a rainy afternoon in early August, 1974, at the intersection of City Park Avenue and Park Manor Road in the City of Portsmouth. A traffic island is located on Park Manor Road at the intersection, and traffic turning left from City Park Avenue onto Park Manor Road passes to the left of the island. Davies, who had been proceeding northward on City Park Avenue, was in the process of turning left onto Park Manor Road. Turner was travelling eastward on Park Manor Road intending to turn right onto City Park Avenue. The two vehicles collided left side to left side.

Turner reported the accident to State Farm and signed an "Automobile Claim Report" setting forth her version of the incident, which indicated she had a defense. State Farm made a prompt

and full investigation. As part of the investigation, a State Farm claims representative interviewed Turner some four months after the accident. Repeating her version of the accident, Turner stated in the interview that she was approaching the intersection about five miles per hour when Davies, travelling around fifteen miles per hour, "turned too short" onto Park Manor Road and proceeded toward Turner on Davies' wrong side of the road. Turner pulled to her right "in the dirt off of the road" but was hit on her left front fender by Davies, and the impact "spun [Turner's] car around." When police officers arrived, they did not issue any summons or indicate who was at fault in the accident.

Jimmy Smith, Turner's brother, was a passenger in her car at the time of the accident. He was also interviewed by the State Farm claims representative, and he corroborated Turner's version of the accident.

Following the filing of Davies' personal injury action on August 2, 1976, Turner was served with process, and she turned the suit papers over to State Farm. George Gray, an attorney, was designated by State Farm to defend the action and he filed defensive pleadings on Turner's behalf.

Trial of the personal injury action was set for February 22, 1977. Gray notified Turner of the trial date and requested that she contact him to arrange a pretrial interview. She telephoned his office to make an appointment but, following this call, she moved from her local address and never again contacted Gray or anyone else connected with State Farm. Because of her absence, the case was continued several times during a period of more than two years. Despite "every reasonable effort" made by State Farm, she could not be found.

Jimmy Smith did cooperate with State Farm in the early stages of the case, and he indicated to Gray he would give testimony favorable to Turner. In late 1978, however, after Smith had joined the Army and left the state, Gray attempted to take his deposition, but Smith did not appear at the scheduled time. Gray talked with him on the phone later, and he was "an entirely different person." He told Gray that he remembered "little, if anything," about the accident and that he did not wish to be deposed. Gray made no further attempt to depose Smith.

The personal injury action was finally heard on August 3, 1979, in the absence of both Turner and her brother. The testimony presented at trial was stipulated into the present record. Accord-

ing to Davies' version of the accident, as she was making her left turn from City Park Avenue onto Park Manor Road, she saw Turner approaching in the middle of Park Manor Road at a speed of thirty-five miles per hour in a twenty-five mile zone. Davies moved to her right and had come to a stop partially on the traffic island when the left side of her vehicle was struck by the left side of Turner's automobile.

Park Ranger Caviness was the first police officer to arrive on the scene. He observed both vehicles on Davies' side of the road, with a portion of Davies' vehicle on the traffic island. Davies' husband, who was also a police officer, and Officer Burke later arrived on the scene. They corroborated Caviness' statements concerning the positions of the vehicles. All three police officers and Mrs. Davies heard Turner admit fault for the accident.

There was no evidence presented in the personal injury trial supporting Turner's version of the accident. Specifically, there was no testimony that Davies "cut the corner short," that Turner turned to her right in an attempt to avoid the accident, or that the impact occurred on Turner's side of the road.

Testifying in the present proceeding as a witness for State Farm, Gray said Turner and her brother were "the only [possible] witnesses . . . who [could] provide a defense in the case." Gray said further that the statements Turner and her brother made in their interviews with State Farm's claims representative "indicated, to [Gray], that [he] did have a defense . . . which [he] could classify as substantial"; by "substantial defense," he meant "evidence which can be presented to a jury which, if believed, would result in a verdict for [the defendant]."

Gray testified further that when Turner and her brother failed to appear at the personal injury trial, he "lost every chance of any defense on the issue of liability"; he was unable through cross-examination or otherwise to develop any "evidence or testimony [he] could put on to defend." Gray conceded he had advised State Farm some time prior to the personal injury trial that there was "apparent liability" in the case. Gray insisted, however, that this advice to State Farm did not "mean that [he had] backed off from what [he thought was] a substantial defense."

We believe the evidence in this case compels the conclusion that had Turner appeared at the personal injury trial and testified as State Farm had the right to assume she would testify, that is, by reciting the same version of the accident she gave in her interview

with State Farm's claims representative, then a jury issue of her liability would have been established. A jury issue exists " '[i]f there is conflict of the testimony on a material point, or if reasonably fair-minded [persons] may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony.' " *Hoover* v. *Neff & Son*, 183 Va. 56, 62, 31 S.E.2d 265, 268 (1944) (quoting M. Burks, *Pleading and Practice* 543 (3d ed. 1934)).

While these are alternative criteria and all three exist in the present case, we need only point out that, had Turner repeated at the personal injury trial her version of the accident, her testimony would have been in direct conflict with Davies' evidence. Turner's version was not inherently incredible, and the question then would have become one of credibility for the jury. Had the jury accepted Turner's version and returned a verdict in her favor, the verdict would have been supported by evidence. Yet, by willfully failing to attend and testify at the personal injury trial and by failing to assist in securing her brother's testimony, Turner deprived State Farm of the very evidence necessary to make a jury issue of her liability. These failures, concededly in breach of the cooperation clause, clearly prejudiced State Farm in its defense of the personal injury action.

Accordingly, the judgment of the trial court will be reversed. The parties have stipulated that if it is determined Turner's breach of the cooperation clause prejudiced State Farm in the defense of the personal injury action, "then [GEICO] owes [Davies] the amount of the said previous judgment, plus interest and the Court costs of this [declaratory judgment] action." Pursuant to this stipulation, we will dismiss State Farm and enter final judgment in favor of Davies against GEICO in the amounts indicated.

*Reversed and final judgment.*