748 A.2d 1089

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Corazon A. GREGORIE, et al.**

**No. 738, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 31, 2000.

318

Michael J. Budow (Laura Basem Jacobs, Richard E. Schimel and Budow and Noble, P.C., on the brief), Bethesda, for appellant.

William N. Zifchak (Sasscer, Clagett & Bucher, on the brief), Upper Marlboro, for appellees.

Argued before WENNER, BYRNES and ADKINS, JJ.

ADKINS, Judge.

We examine in this appeal the nature and extent of the prejudice from an insured's refusal to cooperate, that a liability insurer must show, pursuant to Md.Code (1995, 1997 Repl. Vol.), § 19–110 of the Insurance Article ("IA") in order for the insurer to be relieved from its obligation to provide insurance coverage. State Farm Mutual Automobile Insurance Company, appellant, contends that the Circuit Court for Prince George's County erred in finding that prejudice existed, but nonetheless imposed liability for coverage. Allstate Insurance Company ("Allstate"), appellee, defends the decision of the circuit court, contending that it properly made a factual finding regarding the extent to which appellant was actually prejudiced and required coverage only to that extent.

## FACTS AND LEGAL PROCEEDINGS

This case arises out of an automobile accident that occurred on the Capital Beltway ("Beltway") on February 10, 1994. Appellee Corazon A. Gregorie was a passenger in a car she owned that was operated by Mark Winston. At some time after midnight, Latricia S. Kirby Agbemashion [1] ("Kirby") was also driving a car on the Beltway and was traveling in front of Gregorie's car in the same lane and direction. At some point, Gregorie's car struck the rear end of Kirby's vehicle.

---

1. During the course of the litigation, Kirby married and took the name Kirby–Agbemashion. She has been referred to throughout the proceedings as "Kirby." For consistency, we shall do the same.

Significant disputes arose concerning the circumstances surrounding the accident. According to Gregorie, it had snowed heavily earlier in the day and at that time the roads were wet and damp. She testified, however, that when Winston and she were driving on the Beltway around midnight, the snow had stopped and the roads had been plowed and were dry. She further testified that when Winston and she approached their exit on Kenilworth Avenue:

> I noticed a very slow moving dark car that had no lights on it, no taillights, no license lights.

> \* \* \*

> I didn't say anything, because I was waiting to exit—I was waiting for either [Winston] to exit or brake. He was not doing anything after a couple of seconds, and at that point I said look out, because apparently he didn't see the car.

> \* \* \*

> [I said look out] because I would have reacted at that point. I would have either been—I would have applied my brakes.

> \* \* \*

> Winston did apply the brakes at that point, and very shortly after we crashed into the car in front of us, [Kirby's] car.

Winston corroborated Gregorie's version of the incident. He testified that at the time of the accident the temperature was freezing "[t]here was a slight dampness to the pavement, slight discoloration. Other than that, the pavement on the Beltway was clear." According to Winston,

> That section of the Beltway was dark. It was about a hundred yards before the ramp started off to the right, and there were lights on the ramp. But on a portion of the

Beltway the roadway was dark and the pavement was dark also.

\* \* \*

As I looked, double clutched and looked to the right from my rearview mirror ... [Gregorie] said look out.... I immediately went on the brakes when I saw ahead of me a car with no lights. My initial reaction to that car was that it was stopped in the Beltway.

\* \* \*

I went full on the brakes. But even as I was going through on the brakes, it was not a question of avoiding that person, it was just too late, it was a question of how much speed I was going to scrub [sic] off before I went into that car ahead of me.

My car swerved about five degrees to the right once I applied the brakes. And it was in that position that I went directly into the rear of the car ahead of me.

\* \* \*

—while I was in the middle of my skid there, I saw what I believed to be a slight flicker, signal flicker of red light to the rear.

After the accident, appellant interviewed Kirby. Kirby claimed that she was driving "about 50, 55" and that she was worried about ice on the road. She also stated that she believed that the other car involved in the accident was "going too quickly."

Linda Weiner was driving behind Winston in the same lane at the time of the accident. In a statement made to appellant's representative, she stated that Kirby's car was "going very, very slow, or just stopped completely" and that she saw that Kirby's car "had on its hazards." She further stated that the weather was clear and she did not see any ice on the roadway. Finally, she stated that she and the other cars on

the Beltway were traveling at approximately the same rate of speed as Winston.

At the time of the accident, Kirby was insured under an automobile insurance policy ("policy") with appellant. After learning of the accident, appellant investigated the claim. In doing so, appellant: (1) obtained a recorded statement from Weiner and Kirby; (2) acquired a copy of the police report and a weather report for the day of the accident; and (3) took pictures of Kirby's vehicle.

Gregorie filed a complaint against Winston to recover for injuries she allegedly sustained in the accident. Winston then filed a Third–Party Complaint against Kirby seeking contribution and indemnification, and Gregorie amended her complaint to name Kirby as a co-defendant. Kirby also brought a separate action against Winston, which was consolidated with Gregorie's tort action. Winston then filed a counter-claim against Kirby in that action.

Appellant retained counsel to defend Kirby against Gregorie's and Winston's claims, and Kirby retained separate counsel to prosecute her own claims. Nevertheless, Kirby refused to cooperate with any of her attorneys. Apparently, Kirby relocated to Georgia and did not respond to appellant's repeated attempts to contact her. Specifically, appellant claims that it: (1) forwarded letters to Kirby by certified mail and first class mail requesting she contact appellant or counsel; (2) left at least ten messages by telephone at her residence; (3) contacted their local office in Georgia and had a representative go to Kirby's residence to obtain her cooperation; (4) retained a private investigator to confirm Kirby's whereabouts and attempt to contact her; and (5) offered to pay all expenses incurred by Kirby to participate in her defense. In total, appellant claims that it "undertook at least 84 attempts to contact [Kirby] and obtain her cooperation."

Kirby's deposition was noted for June 10, 1996, and October 3, 1996, but she failed to appear on both occasions. Additionally, appellant claims that it was unable to respond to written discovery and answer interrogatories due to Kirby's refusal to

communicate with counsel. Gregorie and Winston subsequently filed motions for sanctions. By order dated May 6, 1997, the circuit court ordered that Kirby was "precluded from introducing any evidence of or concerning the circumstances surrounding the ... accident."

A trial was held on liability issues only. Again, Kirby failed to appear, and pursuant to the court order, appellant was forbidden to introduce any evidence in her defense. The jury returned a verdict against Kirby only in favor of Gregorie. Appellant filed a motion for judgment notwithstanding the verdict, which was denied.

Before a jury trial on damages, appellant brought a declaratory judgment action seeking a declaration that it was not obligated to defend and indemnify Kirby for any claim or judgment due to Kirby's failure to cooperate. Gregorie simultaneously brought a declaratory judgment action against appellant and the insurer of her vehicle, Allstate, seeking a declaration whether appellant or Allstate would be liable to Gregorie.

On March 5, 1999, the trial court found that Kirby had failed to cooperate with appellant and that appellant was actually prejudiced by her failure. The court entered an order holding that appellant was not obligated to defend or indemnify Kirby for claims that arose out of the accident. On Allstate's motion for reconsideration, however, the trial court held in a written opinion that appellant was obligated to defend or indemnify Kirby only to the extent that it was actually prejudiced. The trial court then examined the evidence presented at trial, and evidence that appellant proffered that it would have presented had Kirby cooperated. Based on this evidence, the trial court found that Kirby and Winston were both negligent, and that appellant was "responsibl[e] for fifty percent (50%) of Gregorie's damages up to the limits of [appellant's] liability coverage on the Kirby vehicle." This appeal followed.

## DISCUSSION

### a.

In a declaratory judgment action, the trial court determines issues of law and fact, and its conclusions as to the facts will not be disturbed unless clearly erroneous. *See Aetna Cas. and Sur. Co. v. Brethren Mut. Ins.*, 38 Md.App. 197, 206, 379 A.2d 1234 (1977), *cert. denied*, 282 Md. 730 (1978). In reviewing the trial court's legal conclusions, we must determine whether the trial court was legally correct. *See Heat & Power v. Air Products*, 320 Md. 584, 591, 578 A.2d 1202 (1990). Moreover, "in a declaratory judgment action which presents an issue of coverage under the terms of an insurance policy, 'it is the function of the court to interpret the policy and decide whether or not there is coverage.' " *Mitchell v. Maryland Casualty*, 324 Md. 44, 56, 595 A.2d 469 (1991) (quoting *St. Paul Fire & Marine Ins. v. Pryseski*, 292 Md. 187, 194, 438 A.2d 282 (1981)).

### b.

The policy between appellant and Kirby required her to cooperate with appellant, and assist in (1) making settlements, (2) securing and giving evidence, and (3) attending hearings and trials. Although Maryland courts have recognized the validity of such clauses, an insurer is required to prove more than a mere failure to cooperate in order to disclaim coverage. By statute, Maryland law provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer . . . only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

IA § 19–110.

A cooperation clause in an insurance contract requires that "[t]he insured . . . assist in good faith in making every legitimate defense to a suit for damages." *Indemnity*

*Ins. Co. of N.A. v. Smith,* 197 Md. 160, 164, 78 A.2d 461 (1951). Under such a clause, the insured must make full and frank disclosures to the insurer, *see Travelers Insur. Co. v. Godsey,* 260 Md. 669, 673, 273 A.2d 431 (1971), give the insurer information needed for the defense, and be available for court proceedings and hearings. *See Smith,* 197 Md. at 164–65, 78 A.2d 461. For example, in *Smith,* the insureds left the jurisdiction, did not inform relatives or friends where they were going, and did not appear for trial. *See id.* at 166, 78 A.2d 461. The insurer sent an investigator to attempt to find the insured, but the investigator was unsuccessful. *See id.* Based on this evidence, the Court held that the insureds had failed to cooperate with the insurer. *See id.* at 167, 78 A.2d 461.

There is no dispute that Kirby failed to cooperate. Further, the trial court found that appellant was actually prejudiced by Kirby's failure to cooperate. Under IA section 19–110, a finding of actual prejudice permits an insurer to disclaim coverage. Nevertheless, the trial court, relying on the Court of Appeals's decision in *Fid. & Cas. Co. v. McConnaughy,* 228 Md. 1, 179 A.2d 117 (1962), went on to make factual findings regarding the outcome of the litigation if Kirby *were* to have cooperated, and on that basis, in Kirby's absence, held appellant liable for a proportionate share of appellee's injuries. Appellant contends the trial court erred and that it should have been permitted to disclaim all coverage under the policy once actual prejudice was found. We agree with appellant.

What constitutes actual prejudice has not been fully developed in Maryland cases. *See* Andrew Janquitto, *Maryland Motor Vehicle Insurance,* (2d ed.1999) § 7.13(A) at 262. Whether actual prejudice exists must be determined on a case-by-case basis. *See id.* at 263. It is clear that "an insurer may not disclaim coverage on the basis [that the prejudice] is only possible, theoretical, conjectural, or hypothetical." *General Acc. Ins. Co. v. Scott,* 107 Md.App. 603, 615, 669 A.2d 773, *cert. denied,* 342 Md. 115, 673 A.2d 707 (1996).

In *Harleysville Ins. v. Rosenbaum*, 30 Md.App. 74, 351 A.2d 197 (1976), an insurer claimed that an insured breached the "notice" and "assistance and cooperation" provisions of an insurance policy, and that it suffered actual prejudice because "the insured died before trial, without having given [the insurer] any account of the accident." *Id.* at 83, 351 A.2d 197. We held that the trial court's conclusion that there was actual prejudice was premature because the finding was made before the trial of the underlying action. *See id.* at 86, 351 A.2d 197. Nevertheless, we suggested that, in determining whether actual prejudice exists,

> it is necessary to show an act on the part of the insured 'which had or could have had any effect upon the jury which induced them or in any way caused them to render the verdict against himself.' Stated another way, the insurer must establish a substantial likelihood that if the cooperation or notice clause had not been breached, the insured would not have been held liable.... It is necessary to have available the facts and circumstances surrounding the accident which is the basis for the claim against the insured, because a finding of actual prejudice inherently depends to some extent upon the closeness of the case.

*Id.* at 84, 351 A.2d 197 (footnotes omitted).

The above language in *Rosenbaum* suggests that an insurer must show facts that would have allowed it to prevail at trial in order to show actual prejudice. Later authority, however, makes clear that the insurer is not held to such a strict standard. In *Washington v. Federal Kemper Ins.*, 60 Md. App. 288, 482 A.2d 503 (1984), *cert. denied,* 302 Md. 289, 487 A.2d 292 (1985), an insured provided notice of a claim only after an adverse judgment had been rendered. *See id.* at 291, 482 A.2d 503. The insurer claimed it was actually prejudiced because it lost the opportunity to evaluate the claim, choose counsel, and attempt to settle the matter. *See id.* at 294, 482 A.2d 503. We held that the insurer was actually prejudiced. *See id.* In doing so, we rejected the strict standard suggested *in Rosenbaum,* labeling it dicta. We explained:

We do not perceive that [IA § 19–110] requires the insurance carrier to assume the burden of proving a negative. It is impossible for the carrier to demonstrate to the court what witnesses it might have discovered, what defense it might have made, and what disposition it might have reached in settlement if it had received notice before the verdict was rendered in this case.

*Id.* at 295–96, 482 A.2d 503.

Both *Rosenbaum* and *Washington* dealt with actual prejudice as a result of insufficient notice to the insurer. In *Nationwide Ins. Co. v. United States Fidelity & Guar. Co.*, 304 A.2d 283 (D.C.1973), the District of Columbia Court of Appeals was asked to apply Maryland law in determining whether an insurer was actually prejudiced by an insured's failure to cooperate. In that case, as in the present one, an insured failed to appear for trial, and the insurer was forced to proceed without the insured. *See id.* at 284. The insured was found liable, and another driver sought to recover from the insurer for contribution. *See id.* The insurer argued that it was relieved from providing coverage based on its insured's failure to cooperate. *See id.* The party seeking contribution argued that the insured was not relieved from its duty to provide coverage because it failed to show prejudice—if the insured "had been present at the negligence trial, the outcome would have been the same." *Id.* at 285. The court disagreed and held that the insurer had shown actual prejudice. *See id.* In doing so, the court reasoned:

Although there are some cases which hold that '(t)he unreasonable failure of the insured to attend the trial and testify where he is a material witness is a breach of the cooperation clause, and . . . prejudicial per se' this no longer seems to be the rule in Maryland. In the instant case, however, where the record affirmatively shows that the insurer attempted in good faith to secure the presence of [the insured], . . . [and] that it was unable to obtain his deposition or attendance at trial, and that he was the sole witness for the defense, we

cannot say that the trial court erred in finding that the insurer had been prejudiced. .

*Id.* (footnotes omitted).

In the instant case, the trial court found that there was actual prejudice to the insurer. We agree. Kirby's refusal to cooperate in discovery led the trial court to enter an order forbidding appellant from offering any evidence in appellant's defense. As a result, the jury heard only the uncontroverted testimony of Gregorie and Winston that Kirby was driving at an unreasonably slow speed. In a statement given by Kirby to appellant after the accident, she said that she was driving "about 50, 55," that she was worried about ice on the road, and that the other car involved in the accident was "going too quickly." Appellant was neither able to offer Kirby's testimony nor provide an explanation for her alleged unreasonably slow speed. When the insured's statement made about the circumstances of the accident indicates a defense to the action, a failure to assist in preparation for trial and attend the trial is ordinarily prejudicial to the insurance company. *See Hynding v. Home Accident Ins. Co.*, 214 Cal. 743, 7 P.2d 999, 1002 (1932); *Rohlf v. Great Am. Mut. Indem. Co.*, 27 Ohio App. 208, 161 N.E. 232, 234 (1927); *Cameron v. Berger*, 336 Pa. 229, 7 A.2d 293, 295 (1938) (trial court should have directed verdict as a matter of law where the insured was an essential witness at trial and only witness for the defense); *State Farm Mut. Ins. Co. v. Davies*, 226 Va. 310, 310 S.E.2d 167, 169 (1983).

In the present case, however, despite finding actual prejudice from Kirby's failure to prepare for or testify at trial, the trial court concluded that, had Kirby cooperated, both she and Winston would both be liable for Gregorie's injuries. As a result of this finding, the court held that appellant could only disclaim coverage "to the value of its loss of the Right of Contribution from Winston, that is to say responsibility for fifty percent (50%) of Gregorie's damages up to the limits of [appellant's] coverage on the Kirby vehicle." We disagree with the trial court's application of *McConnaughy*, and explain.

In *McConnaughy,* two witnesses to Butler's automobile accident told Butler's insurer that Butler's car had been on the correct side of the road and the other car on the wrong side. *See McConnaughy,* 228 Md. at 5, 179 A.2d 117. Based on these statements, the insurer rejected a settlement offer of $3,500. *See id.* At some future date, the insurer discovered that Butler procured false testimony from the two witnesses and the insurer disclaimed liability based on violation of a cooperation clause. *See id.* The settlement offer of $3,500 was subsequently withdrawn, and a verdict of $10,000 was entered against Butler. *See id.* at 6, 179 A.2d 117.

In an action brought by the plaintiff in the underlying action to recover from the insurer, the insurer stated in an affidavit that it would have accepted the $3,500 had it not been for the false statements by the insured's witnesses. *See id.* Based on this affidavit, the Court of Appeals held that the insurer, while actually prejudiced, was responsible for payment of $3,500. *See id.* at 14, 179 A.2d 117. Writing for the Court, Judge Hammond explained:

> [W]e think the insurer itself has established that it was prejudiced only as to the excess of the policy limit over $3,500. In substance and effect, the insurance company has urged upon us, as the affidavit filed in support of its motion to deny summary judgment below stated, that it would have settled the case for $3,500 if Butler had not produced [fraudulent testimony], and we think that it should be liable for the amount it would have paid if Butler had been frank and fair. It itself showed a lack of prejudice as to $3,500 of the liability.

*Id.* at 14–15, 179 A.2d 117.

The trial court erred in its application of *McConnaughy* to the present circumstances. Unlike *McConnaughy,* appellant never attempted to settle the case for a specific dollar amount, and thus made no admission about the limits of its prejudice. Indeed, appellant was in a position that it could not evaluate the merits of the claims against the insured due to Kirby's complete lack of cooperation.

To adopt the trial court's approach would ignore our decision in *Washington*, in which we expressly stated that the insurer is not required to "prove a negative." *Washington*, 60 Md.App. at 295, 482 A.2d 503. Because of Kirby's failure to cooperate, appellant was unable to offer Kirby's testimony to support its position either in the trial of the underlying case or in the present litigation. By holding a hearing to make a factual determination as to the liability of Winston and Kirby on the hypothetical assumption that Kirby cooperated and testified, the trial court required that appellant prove at least two unknown matters: (1) how persuasive Kirby's testimony *would have been;* and (2) what evidence or witnesses it *might have* discovered with her cooperation. This requirement of proof is the equivalent of the requirement we declined to impose on the insurer in *Washington*, characterizing the standard as "proving a negative." *Id.* at 295, 482 A.2d 503. We think this standard, if adopted, would encourage impermissible speculation on the part of the litigants and the trier of fact.

Cases outside Maryland have used varying standards in defining what constitutes actual prejudice sufficient to justify a disclaimer of coverage by the insurer. *See generally*, Romualdo P. Eclavea, Annotation, *Liability Insurance: Failure or Refusal of Insured to Attend Trial or to Testify as Breach of Cooperation Clause*, 9 A.L.R.4th 218, 240 (1981). The Supreme Court of Virginia formulated a particularly clear test in *Davies, supra*. Davies filed a personal injury action against Turner for injuries Davies sustained in an automobile accident. *See Davies*, 310 S.E.2d at 168. Turner failed to appear for trial and Davies won a judgment against Turner. *See id.* Turner's insurer disclaimed liability on the ground that Turner's failure to appear at trial constituted a breach of a cooperation clause. *See id.* The trial court rejected the insurer's contention because "evidence of liability [in the personal injury action] was rather overwhelming and it would stretch the imagination to believe that a different result would have been obtained." *Id.*

The Supreme Court of Virginia reversed the trial judge's ruling and held that the insurer could deny coverage complete-

ly. *See id.* In doing so, the appellate court found that the trial court's fact finding into whether Turner was negligent "contains a built-in rule of law imposing upon [the insurer] the burden of proving that Turner's appearance and testimony at trial would have produced a different result." *Id.*

The court then addressed what an insurer must show in order to disclaim coverage. *See id.* at 169. The court rejected "a per se rule that would permit an insurer to show merely that its insured failed to appear at trial [and] a rule that would require an insurer to show that, had its insured appeared, the result would have been in [the insured's] favor." *Id.* at 170. Rather, the court favored a test whereby an insurer could disclaim coverage where a trier of fact could have found in the insured's favor had the insured cooperated. *See id.* The court explained:

> [I]n an action on the policy, when the insurer shows that the insured's willful failure to appear at the original trial deprived the insurer of evidence which would have made a jury issue of the insured's liability and supported a verdict in his or her favor, the insurer has established a reasonable likelihood the result would have been favorable to the insured and has carried its burden of proving prejudice....

*Id.* The court subsequently found that Turner's failure to appear deprived the insurer "of the very evidence necessary to make a jury issue of her liability" and relieved the insurer of liability. *Id.* at 172. (For cases applying similar standards, *see Brooks v. Haggard,* 481 P.2d 131, 134 (Colo.App.1970) ("so potentially valuable as to have materially affected the outcome of the trial"); and *Hutt v. Travelers' Ins. Co.* 110 N.J.L. 57, 164 A. 12, 14 (1933)).

Although we shall not rely exclusively upon or adopt the *Davies* standard, we consider it a balanced approach to the issue of how to prove prejudice to an insurance company. It is consistent with *McConnaughy,* and would hold the insurance company liable when the prejudice is either minimal, or can be measured in specific dollars. Moreover, it does not require undesirable speculation by the court in the declaratory

judgment action as to what the jury *would* have believed, had it considered evidence of the insured. Thus, it is also consistent with *Washington,* and its rejection of a standard which would require the insurer to prove a negative.

Other jurisdictions have adopted different standards, often less clearly defined than the *Davies* standard. In *Boone v. Lowry,* 8 Kan.App.2d 293, 657 P.2d 64 (1983), the Kansas Court of Appeals rejected a standard of "possible prejudice" in favor of a standard requiring "a substantial likelihood that the trier of fact, in an action against the insured, would have found in the insured's favor." *Id.* at 72. In *Boone,* the Court held that the insured's refusal to appear for trial or otherwise cooperate was not sufficient to meet the test because the insured had admitted his negligence in prior statements given to the insurer. *See id.* at 69–70; *see also Dougherty v. Hanover Ins. Co.,* 114 N.J.Super. 483, 277 A.2d 242, 245 (1971).

The Supreme Court of Wisconsin considered the appropriate test to be whether the failure to cooperate prevented the insurer from "presenting a meritorious defense." *Dietz v. Hardware Dealers Mut. Fire Ins. Co.,* 88 Wis.2d 496, 276 N.W.2d 808, 814 (1979). The court announced:

> The insured's duties of notice and cooperation will not be interpreted as technical traps denying a worthy plaintiff recovery. However, recovery cannot be granted when an insured's reprehensible conduct prejudices the insured's right to present a meritorious defense. . . .
>
> 'If insurers may not contract for fair treatment and helpful cooperation by the insured, they are practically at the mercy of the participants in an automobile collision.'

*Id.* (quoting *Watkins v. Watkins,* 210 Wis. 606, 245 N.W. 695, 698 (1933)).

A similar standard was articulated in *Anderson v. Kemper Ins. Co.,* 128 Mich.App. 249, 340 N.W.2d 87 (1983), in which the Court of Appeals of Michigan measured prejudice by whether the insurer was "materially injured in their ability to contest the merits of the [claim]." *Id.* at 90; *see also Coleman*

*v. Aetna Ins. Co.,* 309 A.2d 306, 308 (D.C.App.1973) (whether testimony was "vital to the defense"); *Schneider v. Autoist Mut. Ins. Co.* 346 Ill. 137, 178 N.E. 466, 467–68 (1931) (since insured driver was only witness for the defense who knew about the accident, his refusal to attend trial rendered insurer handicapped and incapable of conducting its defense); *Eakle v. Hayes,* 185 Wash. 520, 55 P.2d 1072, 1073 (1936)(insured was "principal actor . . . against whom negligence was charged, . . . [so that] he was a necessary and vital witness.").

While many of these standards are similar, they vary in the strictness of the proof required to show prejudice to the insured. We conclude that the present case, however, presents a circumstance that qualifies as prejudice justifying disclaimer of coverage under any of these standards.

The prejudice to appellant is well illustrated when one examines the dilemma faced by the trial court. As the trial court explained:

> If Kirby had offered admissible evidence by way of deposition or appearance at the Declaratory Judgment proceeding, and provided an explanation for her slowed to stopped condition on the Beltway, [appellant] might well have proven prejudice as to the Verdict entered against Kirby. The [c]ourt does not know why Kirby was traveling at an inordinately slow or stopped speed. Was there a sudden mechanical failure? Was Kirby experiencing some illness that caused her to slow or stop? Did Kirby see some ice or snow that other witnesses overlooked? Had Kirby slowed to avoid a collision with another motor vehicle or animal or object on or near the Beltway? In short, the [c]ourt does not know why Kirby was in the precarious position that she was in.

If there were no circumstances that might explain the answers to the court's questions, then Kirby's absence may not have prejudiced appellant, and disclaimer of coverage may have been inappropriate. *See, e.g., United States Fid. & Guar. Co. v. Perez,* 384 So.2d 904, 905 (Fla.App.), *rev. denied,* 392 So.2d 1381 (Fla.1980) (insured's testimony could not possibly have

been beneficial to insurer, since "the record clearly demonstrated that such testimony would have established the insured's negligence"); *Western Farm Bureau Mut. Ins. Co. v. Danville Constr. Co.*, 463 S.W.2d 125, 128–29 (Ky.1971) (factual material submitted to trial court did not suggest existence of substantial evidence to show why non-appearance materially prejudicial); *Rosalez v. Unigard Ins. Co.*, 283 Or. 63, 581 P.2d 945, 947–48 (1978) (prejudice not shown by insured's failure to attend trial when the insured had admittedly made a left turn in front of plaintiff's car, which was approaching from the opposite direction).

Given the existence of Kirby's statement, however, it is fair to presume that if Kirby had cooperated, appellant could have presented evidence that answered some or all of the trial court's inquiries. Kirby stated that she was traveling 50–55 miles per hour, and was concerned about ice on the road. She was hit from behind by Winston, and the testimony from Gregorie suggested that Winston may have been slow to notice and react to the presence of Kirby's car in front of him. The circumstances suggesting negligence by Kirby are not so compelling that we should disregard Kirby's statement in assessing prejudice to appellant from her absence. This statement, and evidence consistent with it, would have created a material factual dispute with the conflicting testimony that she was traveling so slowly as to pose a danger to other traffic on the Beltway.

■ Obviously, the degree of likelihood that a different verdict would have resulted had the insured testified is difficult for the trial court to determine without having heard the insured's description of the accident and observed the demeanor of the witness. To be consistent with our decision in *Washington*, moreover, we cannot impose on the insurance company the burden of establishing the weight and strength of the testimony of its absent insured in order to establish prejudice, when both the circumstances of the accident and Kirby's statement suggest the existence of a viable defense.

The trial court's approach in addressing the prejudice to appellant was a novel one. The court found that appellant was prejudiced, but then took the unusual step of "retrying" both Gregorie's case against Kirby and her case against Winston, the driver of her car. We believe the trial court sought to reach an equitable result by imposing shared liability upon both drivers, thereby affording complete recovery to the injured party. The court's approach is not consistent, however, with our decision in *Washington* or with the standards established in other states, because it adds an additional layer to the requirement of prejudice. This approach not only requires the insurer to show actual prejudice, but it mandates delving into an examination of the proportion or amount of the prejudice. It does so based on additional fact-finding made without the benefit of the insured's testimony. The approach requires speculation about the missing testimony, and how a fact finder would react to same.

The court had insufficient information about Kirby's potential testimony to conclude whether or not she would have been determined negligent had she testified. By concluding that her testimony would not have been sufficient to relieve her from liability, the court imposed the burden on the insurance company to prove what it could not—exactly what Kirby would have said, and how she would have said it. For these reasons, we hold that the trial court erred. Kirby's failure to cooperate relieves appellant of any liability on the underlying claim. We therefore vacate the judgment entered below, and remand this case to the trial court with directions to enter judgment in favor of appellant.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**

Dissenting Opinion by BYRNES, J.

BYRNES, Judge, dissenting.

I respectfully dissent.

The trial court assessed the evidence that was admitted at the trial of the underlying tort action and the evidence that

was precluded from admission at that trial and made a factual finding on the issue of "actual prejudice" to State Farm, under IA § 19–110. Specifically, the trial court found that there was a substantial likelihood that had Kirby not breached the cooperation clause, the verdict would have been different *as to Winston only*, i.e., that both Winston and Kirby would have been found liable. Thus, Kirby's failure to cooperate resulted in actual prejudice to State Farm in that it deprived State Farm of the benefit of Kirby's right of contribution against Winston. The trial court ruled that State Farm could disclaim coverage to the extent of one-half of the judgment amount, thus restoring it to the position it would have occupied had it not been prejudiced.

The majority suggests that the trial court applied a legally incorrect standard for "actual prejudice." I disagree. Relying upon *Harleysville Insurance Company v. Rosenbaum*, 30 Md.App. 74, 351 A.2d 197 (1976), the trial court explained that in deciding whether State Farm had suffered actual prejudice, it considered whether Kirby's failure to cooperate had made it substantially likely that the verdict rendered at the liability trial would have been different than it would have been had she cooperated. In *Rosenbaum*, the trial court found that the insurer had suffered actual prejudice as a result of the insured's failure to give notice and to cooperate. This Court observed that before the 1964 enactment of Md.Code, article 48A, § 482, the predecessor statute to IA § 19–110, insurance companies could disclaim coverage for lack of notice without proof of actual prejudice, but could disclaim coverage for lack of cooperation only upon proof of actual prejudice. 30 Md. App. at 84, n. 12, 351 A.2d 197. The Court then looked to the case law pre-dating the predecessor statute and addressing disclaimers for lack of cooperation to glean the meaning of "actual prejudice" in the statute. *Id.* (citing *United States Fid. & Guar. Co. v. Williams*, 148 Md. 289, 307, 129 A. 660 (1925)). To be sure, the Court's discussion of "actual prejudice" was dicta, because it ultimately held that the issue of actual prejudice had not been ripe for decision. Nevertheless,

there was a firm basis to the meaning the Court ascribed to that phrase.

Our later opinion in *Washington* did not disapprove of the standard for actual prejudice explained in *Rosenbaum*. Rather, the Court concluded that the cases were factually inapposite. In *Rosenbaum,* the insurer received notice of the accident from a third party within weeks of its occurrence. Even though the insured did not respond to inquiries about the accident and eventually died, the insurer was not foreclosed from conducting an investigation and discovering the facts surrounding the accident. By contrast, in *Washington,* the insurer first received notice of the claim the day after the verdict against its insured was rendered. In the ensuing declaratory judgment coverage action, the insurer put on evidence showing that, as a consequence of the insured's failure to give notice, it had been prevented from investigating the facts underlying the claim, and therefore was unable to show what facts it could have or would have discovered but for the insured's breach. This Court affirmed the trial court's factual finding of actual prejudice to the insurer, holding that when the insurer "has been deprived of all opportunity to defend," and must prove a negative to show actual prejudice, the entry of the adverse judgment is itself "affirmative evidence" of actual prejudice. 60 Md.App. at 296, 482 A.2d 503. The Court did not change the standard for actual prejudice; rather, it clarified the circumstances under which the mere entry of an adverse judgment will suffice to satisfy that standard.

In *St. Paul Fire Marine Ins. v. House,* 315 Md. 328, 332, 554 A.2d 404 (1989), the Court of Appeals noted that article 48A, § 482 "measures by the standard of actual prejudice *the materiality of the breach* of [the] covenants [to give notice and to cooperate] by the insured for the purpose of determining if the breach excuses performance by the insurer." (Emphasis supplied). *See also Sherwood v. Hartford,* 347 Md. 32, 42, 698 A.2d 1078 (1997)(quoting that language from *House*); *T.H.E. Ins. v. P.T.P., Inc.,* 331 Md. 406, 414, 628 A.2d 223 (1993)(same). The use of the word "materiality" in that

context suggests to me that the standard for "actual prejudice" described in *Rosenbaum* remains viable.

The majority does not specify the standard that the trial court should have applied in determining actual prejudice, reasoning that under any standard, the court erred in finding no prejudice with respect to the verdict against Kirby. The majority holds that under the circumstances in this case, the trial court erred in considering the evidence that was admitted and that was precluded at the trial of the underlying tort action and in determining from its evaluation of that evidence what a reasonable jury would have done had Kirby/State Farm been permitted to put on a defense. The majority concludes that, as in *Washington,* the insurer should not have been made to prove a negative, and the trial court should have found from the mere entry of judgment against Kirby that State Farm suffered actual prejudice. I disagree.

The cases addressing disclaimers of coverage under IA § 19–110 make plain that whether the insured's breach of the covenant to give notice or the covenant to cooperate resulted in actual prejudice to the insurer is a question of fact to be decided by the trial court in the declaratory judgment action and to be reviewed under the clearly erroneous standard. *See Washington,* 60 Md.App. at 297, 482 A.2d 503 ("We do not find the trial court's conclusion that there was actual prejudice to the [insurer] by reason of the [insured's] failure to notify and cooperate was clearly erroneous"); *Nationwide Insurance Co. v. United States Fidelity & Guaranty,* 304 A.2d 283, 285 (D.C.1973) (holding that on the facts in evidence the trial court did not err in finding that the insurer had been prejudiced). For the trial court to determine as a matter of fact whether more likely than not the insured's lack of cooperation in the underlying tort action materially affected the verdict, it must ascertain what the state of the evidence would have been in the underlying case had the insured cooperated, and what a reasonable jury would have done in response to that evidence. There simply is no other way for the trial court to decide the issue. In the case *sub judice,* unlike in *Washington,* that evidence was available to the trial court to evaluate.

Kirby notified State Farm about the accident and initially cooperated in the investigation. State Farm obtained a statement from her about her version of the accident and conducted an investigation that disclosed the existence of an independent witness, Linda Weiner. State Farm obtained a statement from Weiner, in which she gave her version of the accident. It also obtained other information, such as a police report and weather statistics. Thus, Kirby's eventual lack of cooperation in the underlying tort action did not put State Farm in the position of having to prove the existence of unknown facts in the declaratory judgment action. Not only were the fruits of State Farm's factual investigation known, State Farm was able to present Weiner's live witness testimony at the declaratory judgment trial. In short, unlike in *Washington,* and unlike in most cases in which the insured's breach begins with lack of notice, in this case the facts that would have been adduced at the underlying tort action trial but for Kirby's lack of cooperation were known.

The trial court carefully considered the "precluded" evidence and the admitted evidence, performed a demeanor-based credibility assessment of Linda Weiner, and found that State Farm had suffered actual prejudice by virtue of the loss of its insured's right of contribution against a joint tortfeasor. It issued a lengthy and thorough memorandum opinion explaining its findings, including the basis for its conclusion that the jury still would have found Kirby liable had it heard evidence from the defense. The trial court pointed out, for example, that Kirby's version of events was inconsistent not only with Gregorie's and Winston's versions but also with Weiner's version, with the photographs that showed the damage to the vehicles, and with the weather statistics. In my view, we cannot say that the trial court clearly erred in its fact finding.

Finally, the majority holds that the trial court erred in allowing State Farm to disclaim coverage to Kirby partially, to the extent of the dollar value by which it was prejudiced. Specifically, the majority reasons that the trial court erred in reading *Fid. & Cas. Co. v. McConnaughy,* 228 Md. 1, 179 A.2d

117 (1962), as authority for such a ruling. I disagree with this conclusion also.

In *McConnaughy*, which was decided prior to the enactment of article 48A, § 482, the trial court in a declaratory judgment coverage action ruled on summary judgment, without explanation, that the insurer had not been prejudiced by the insured's failure to cooperate, which had taken the form of procuring witnesses to testify falsely in his favor. The underlying tort action had resulted in a $10,000 judgment against the insured. The Court of Appeals reversed. In so doing, it observed that even though it accepted the insurer's position that the insured's actions had caused it prejudice, the insurer was prejudiced only to the extent of $6,500 of the judgment because its own evidence showed that but for its insured's lack of cooperation, it would have paid $3,500 to settle the case.

I agree with the trial court in the instant case that *McConnaughy* stands for the proposition that in a declaratory judgment coverage action in which the insurer seeks to disclaim coverage on the basis of the insured's breach of the covenant to cooperate, the court may allow a partial disclaimer commensurate with the prejudice actually suffered by the insurer, assuming that that is quantifiable.[1] I do not read the lan-

---

1. In a footnote in *Sherwood v. Hartford, supra,* 347 Md. 32, 698 A.2d 1078, the Court of Appeals indicated approval of the allowance of a partial disclaimer of coverage. *Sherwood* concerned an insurer's obligation to pay pre-notice costs of defense incurred by the insured. After observing that in that context, the issue of actual prejudice includes an assessment of whether the insured's pre-notice expenses were reasonable, and whether they "materially exceed[ed] that which the insurer would likely have incurred in any event," *id.* at 48–49, 698 A.2d 1078, the Court commented:

   The fact that an expense incurred by the insured was, itself, reasonable in amount does not necessarily resolve the question of prejudice. The insurer may, for example, have an arrangement with competent defense counsel or a competent investigator or other support person to provide service at a negotiated rate. If the insured, in derogation of its contractual duty not to do so, employs counsel or other litigation support persons at rates that, though not facially unreasonable, are nonetheless substantially in excess of those that would have otherwise been paid by the insurer had it been notified and undertak-

guage of the subsequent enactments (article 48A, § 482 and IA § 19–110) as precluding trial courts from finding partial disclaimers of coverage, nor do I consider the factual distinctions between *McConnaughy* and the case *sub judice* to be meaningful. Because there was no clear error in the trial court's factual finding that the only prejudice suffered by State Farm was its loss of the benefit of Kirby's right of contribution against Winston, we should not disturb the trial court's decision to allow State Farm to disclaim coverage to Kirby in an amount commensurate with that prejudice: one-half of the judgment.

---

en the defense earlier, the insurer may have some basis for claiming prejudice *at least to the extent of the difference.*
347 Md. at 49, n. 7, 698 A.2d 1078(emphasis supplied).