DIETZ, individually and by William A. Melby, her Guardian ad Litem, and another, Plaintiffs-Appellants, v. HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY a/k/a Sentry Insurance, Defendant-Respondent.

Supreme Court

*No. 76–585. Argued February 26, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 808.)

For the appellants there was a brief by *Michael L. Eckert* and *O'Melia, Melby, Smith & Schiek, S. C.*, of Rhinelander, and oral argument by *William A. Melby*.

For the respondent there was a brief by *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.*, of Wausau, and oral argument by *Walter Piehler*.

COFFEY, J. This appeal challenges a summary judgment entered in favor of the defendant-respondent (hereinafter the insurer, Hardware Dealers Mut. Fire Ins. Co.) and dismissing the complaint of the plaintiff-appellant Nancy Dietz. The trial court's judgment is based upon its finding that the insured Michael Dietz initially gave false statements, subsequently recanted by him, regarding the facts and circumstances of the August 22, 1968 automobile accident wherein the plaintiff was injured. The court concluded that the insured's contradictory statements constituted a material and prejudicial breach of the terms and conditions of the insurance policy dealing with the insured's contractual obligations of timely notice and cooperation. Michael Dietz is "an insured" pursuant to the terms of the insurance policy issued in the name of his father, Conrad Dietz.

Michael Dietz, the plaintiff's brother, was operating the family car at 2:30 a.m. on the 22nd of August, 1968 on Velvet Lake Road in Oneida County. The plaintiff's

two friends were passengers in the automobile: Carla Welk and Jan Taylor. The accident occurred when the car, traveling at a high speed, left the road and struck a tree. The plaintiff, age 14, was thrown against the windshield and suffered serious internal injuries as well as severe facial and head wounds.

The Oneida County Sheriff's Department investigated at the scene of the accident and filed a report revealing that the insured stated that the accident was caused as a result of being forced off the two-lane road by an oncoming car. During the course of the next week, the insured gave two additional accounts of the accident to Warren Polman and Harvey Cooper, investigators for the insurer. The insured, (Michael Dietz) during the investigation interviews, explained in detail that he was traveling 35 to 40 m.p.h. prior to the accident and was rounding a curve when he saw two cars approaching him from the opposite direction. He estimated that the oncoming cars were separated by a distance of eight car lengths and traveling about 55 to 60 m.p.h. The insured told the insurance investigators that he attempted to swerve between the approaching vehicles but lost control of his own automobile, striking a tree on the opposite side of the road. He further stated that he did not veer from his proper lane of traffic until the lead car in his lane was some 20 feet in front of him.

It should be pointed out that these statements conflict with his prior statement to the Oneida County Sheriff's Department wherein he stated he was forced off the road by a single oncoming car. Also in the statement to the insurance investigator the insured owned up to his excessive consumption of beer prior to the accident. He stated that he drank 10 or 15 small Dixie cups of beer. In trial testimony Michael Dietz stated he had consumed only 5 or 6 seven-ounce glasses of beer.

The plaintiff's two friends and passengers in the automobile also made statements to the insurance investi-

gators. Jan Taylor stated she was asleep at the time and did not see the events preceding the crash. Carla Welk corroborated the insured's story that just prior to the accident, two cars approached the Dietz vehicle from the opposite direction. However, she could not recall whether one of the cars was in their lane of traffic. The claims adjuster originally questioned the validity of the insured's explanation of the accident, but after Investigator Polman's on-site investigation concluded that tire tracks left at the scene supported the stories given by both the insured and Carla Welk, the adjuster changed his opinion and accepted this set of facts. Carla Welk and the insured again gave statements to an independent investigator and both remained firm in their account of the accident, stating it was caused by the two oncoming cars. The record is void of any reference to statements made by the plaintiff, Nancy Dietz, either to the Sheriff's Department or the insurer.

In March, 1972 the plaintiff commenced an action to recover for her injuries, alleging her brother, the driver of the automobile, was negligent with regard to: failure to maintain a proper lookout; failure to operate the vehicle at a reasonable speed; failure to maintain proper management and control over the vehicle. Prior to and following the commencement of the suit, Hardware Dealers Mut. made several settlement attempts, the amounts ranging from $11,378.80 to $60,000.00 and, in a court conducted pre-trial, the insurer offered $25,000.00 in settlement, but at all times carried the claim in their files as a non-liability situation.

On June 19, 1973, just 6 days before the date of trial, the insured gave a signed statement to plaintiff's counsel, admitting that the earlier accounts of the accident that he was forced off the road by an oncoming car or cars were false. He stated, in fact, he was driving too fast for conditions and lost control of the car while attempting to negotiate a curve in the road. The in-

sured explained the original story he gave was because "it was the first thing that came into my head." This version obviously set up a stronger case for the insurer's liability, thus favoring recovery by his sister. On the same day, plaintiff's counsel presented the insurer a copy of the conflicting statements.

On June 22, 1973, three days before trial, counsel for Hardware Dealers Mutual moved the court for a continuance and the right to amend the pleadings to allege the coverage and/or policy defense issues. Further, the motion requested a bifurcated trial on the policy defense and/or coverage issue. The trial court denied the motion for a continuance but granted the requests for an amendment of the pleadings and a bifurcated trial.

The trial dealing with the negligence and damage issues only commenced on June 25, 1973. The insured was called as a witness for his sister and related that his prior statements to the Sheriff and insurance investigators were false and that the accident was his fault and no other cars were involved. Carla Welk testified for the plaintiff to the effect that at the accident scene, while awaiting the Sheriff's arrival, she and the insured agreed to tell the police that the accident was caused by two oncoming cars. Jan Taylor testified that after regaining consciousness in the hospital, Carla Welk told her the accident was caused by two cars forcing them off the road, but later on Welk told Taylor that there were no other cars involved and the car they were riding in was "just going too fast." At trial, the insurer established that the plaintiff was not wearing her seat belt at the time of the impact. However, the insured attempted to bolster his sister's case by stating that the belts were not accessible because they were tucked inside the passenger seat.

The jury apportioned the negligence against the plaintiff at twenty percent for not wearing a seat belt and

attributed the other eighty percent of negligence to the insured and assessed damages at $57,500. The insurer moved for summary judgment with accompanying affidavits prior to trial on the issues of coverage and/or policy defenses. The affidavits recite even though the company continually considered the claim a non-liability situation based upon their investigation files, they did make certain settlement offers. Further, the affidavits claim that as a result of the insured's false statements, the carrier's settlement negotiations and trial strategy were frustrated and prejudiced. The plaintiff countered with a motion for summary judgment, accompanied by the affidavit of her trial counsel. The affidavit alleges the insurer had always treated the accident as a liability claim and offered in proof the offers in settlement of the insurer, and further stated the defendant's theory of prejudice was without merit.

Based upon the affidavits, briefs, and oral arguments presented, the trial court granted the insurer's motion for summary judgment and dismissed the plaintiff's complaint.

*Issues:*

1. Did the trial court abuse its discretion by denying the insurer's motion for a continuance?

2. Did the insured's contradictory statements breach the terms of the insurance contract so as to materially prejudice the insurer's rights as a matter of law?

The parties to this appeal take issue only as to whether or not the insured's contradictory statements have materially prejudiced the contractual rights of the defendant-insurer. Even though the parties do not formally address the question of whether the trial court abused its discretion by denying the insurer a continuance, we deem this problem to be controlling upon the disposition of this appeal. In *Schauf v. Badger State Mutual Cas. Co.,* 36 Wis.2d 480, 153 N.W.2d 510 (1967) this court in-

dicated that where an insured has breached the term of the insurance contract by giving contradictory accident statements, the basic inquiry is whether there has been a fair determination of liability notwithstanding the insured's contractual breach.[1] Therefore, in addressing this basic question, it is incumbent upon this court to scrutinize the trial court's denial of the insurer's motion for a continuance. In view of the fact that the record reflects the insured made at least three contradictory statements, the last, 6 days before trial, our review of this issue is required in determining whether the insurer has been materially prejudiced.

Generally, the insured's contractual duties of notice and cooperation[2] are designed:

---

[1] In *Schauf v. Badger State Mut. Cas. Co., supra*, it was stated: "On this issue it is immaterial which statement is false because if this case were presented to a jury any verdict would be the result of and bear the stamp of a fact-finding process, the integrity of which has been contaminated by inconsistent statements and incredibility of the insured as a witness. The prejudice and harm to the insurer on these facts are the denial of a fair determination of its liability." *Id.* at 488.

[2] The Hardware Dealers Mutual policy provides:

"4. **Notice.** In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

"5. **Assistance and Cooperation of the Insured.** The insured shall cooperate with the company and upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury and property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own costs, voluntarily make any payment, assume

". . . to protect the insurer from the irresponsibility of the insured, to prevent collusion between the insured and a friendly claimant, and '. . . to put [the] insurer on notice and afford it an opportunity to make such investigation as it may deem necessary to properly defend or settle claims which may be asserted. . . .' In general, the insured's responsibility is to assist and aid the insurer in preparing the case for trial or settlement." Schoone and Berzowski, "Liability Insurance: Effect of False Statements on Duty to Cooperate", 52 Marq. L. Rev. 221, 222–23.

In *Buckner v. General Cas. Co.*, 207 Wis. 303, 309, 241 N.W. 342 (1932) it was held that an insured's duties of notice and cooperation were fulfilled when the policy owner rendered a "fair, frank and truthful disclosure of the information reasonably demanded by the insurer."

Notwithstanding proof of a contractual breach, in Wisconsin an insurer must also prove the breach is material and prejudicial. *Kurz v. Collins*, 6 Wis.2d 538, 549, 95 N.W.2d 365 (1959).[3] *Schauf v. Badger State Mut. Cas. Co.*, *supra*. The rationale underlying the actual prejudice requirement has been explained in the following terms:

". . . we cannot view the issue solely from the standpoint of the two contracting parties, the insurer and the insured. The interests of third parties who have been injured or damaged as a result of the negligent opera-

any obligation or incur any expense other than for first aid to others at the time of accident."

[3] "When it is stated that a false statement or testimony must be material in order to breach a policy co-operation condition, it means that the same must be material to the issue of the liability of the company on its policy. In a sense, whether a false statement or testimony is material to the insurance company's liability on its policy is closely akin to whether the company has been prejudiced thereby, but we deem materiality to be broader in scope than prejudice." *Kurz v. Collins*, *supra* at 546.

tion of the insured vehicle must also be considered.

". . . public policy requires that, where the rights of an injured third party have intervened subsequent to the issuance of the contract of insurance, the insurer should not be freed from liability to such third party, on the ground of non-cooperation of the insured in having made a false statement, unless the insurer has been harmed thereby." *Kurz v. Collins, supra* at 549.

The thrust of the defendant-insurer's argument in favor of affirming the trial court's findings of material prejudice recites: (1) the contradictory statements caused the insurer to handle settlement of the claim in a different manner than if the true facts were known from the time of the initial investigation; (2) the contradictory statements effectively destroyed the insured's credibility to the obvious detriment of the insurer's right to a fair determination of liability; and (3) it is impossible to determine which account of the accident is the true story.

This court recognizes that an insurer is confronted with a myriad of problems particularly when an insured just prior to trial repudiates his original and subsequent statements. Generally, the following has been stated regarding the insurer's quandary under these circumstances:

"Truthfulness seems to be the keystone of the cooperation arch. The insured must tell his insurer the complete truth concerning the accident, and he must stick to this truthful version throughout the proceedings. He must not embarrass or cripple his insurer in its defense against a civil suit arising out of the accident, by switching from one version to another, he must not blow hot and cold to suit his personal convenience.

"When the true facts were disclosed, the company had to exactly reverse its position with regard to essential facts and virtually proclaim their parties and chief witnesses to be liars and wholly unworthy of belief. Practically its only props were struck from under it.

"Moreover had the insurer proceeded to defend on behalf of its assured, *it faced the spectre of having its principal witnesses denounced in open court as perjurers in view of the 'about face' in their stories. . . ." Home Indemnity Co. of N. Y. v. Standard Accident Ins. Co.,* 167 F.2d 919, 924, 926–27 (9th Cir. 1948).

There is little doubt in this case that the insured's conduct constituted a breach of the contractual duties of notice and cooperation. Further, the insurer's arguments that they have been materially prejudiced by the insured's contradictory statements are, at the very least, tenable. We are of the opinion there is a permissible inference that the instances of prejudice alleged by the insurer could have been avoided had the trial court granted their motion for a continuance. The trial court's action had the practical effect of denying the insurer an opportunity to investigate the insured's conflicting accounts of the accident and thus compounded the insurance company's problems in preparing a trial defense.

The insurer claims that Dietz' conduct denied them an opportunity to enter into meaningful settlement negotiations. We agree but we believe no such prejudice would have arisen had the insurer been granted sufficient time to investigate the last minute statement of June 19th. Had the new investigation substantiated the latest accident report, the insurer would then have been able to renew serious settlement discussions with the plaintiff. Alternatively, the insurer could have more thoroughly prepared for trial with the knowledge that their own insured was going to admit that his prior inconsistent statements were in fact lies.

The insurer also claims Michael Dietz' conduct exposed 6 days before trial denied them the opportunity to investigate this new account and to this date they do not know whether this story is truthful or a result of

collusion between the insured and his plaintiff sister. The defendant, Hardware Dealers Mutual is entitled to be suspicious as Dietz explained his timely and convenient turnabout in the following:

"Once I started with this lie it just didn't make sense for me to change my story until now when I realized that I would have to be under oath."

In regard to the possibility of collusion, the record does indicate that an insurance investigator found tire tracks at the accident site which supported the insured's and Welk's original statements. Further, a conflict between the insured's explanation of the original story and Carla Welk's explanation for the false account creates some doubt as to whether the June 19th version of the accident was fabricated in order to aid the plaintiff's recovery from Hardware Dealers Mutual. Dietz claims the original false statement was made because it was the first thing that came to mind. To the contrary is the testimony of Carla Welk who explained she and the insured agreed to tell the Sheriff they were forced off the road by an oncoming car or cars.

Therefore, we conclude the insurer should have been given the opportunity to investigate the possibility of collusion, especially in a case of this type involving the close relationship of brother and sister. In the context of a close family relationship, courts should be aware of the potential for collusion, illustrated in the following case law:

"The duty of the court is to be alert to protect insurers in circumstances where close family relationship or association tend to ally the sympathy of the insured to those with whom the insured may be liable, and normally, in evaluating credibility, such factors are taken into account. We must, on the other hand, recognize that *insurance policies protect not only the insured, but the general public.* . . ." (Emphasis added.) *Up-*

*shaw v. Great American Indemnity Co.*, 112 So.2d 125, 130 (L.A. Ct. App. 1959).

The crucial fact in this case is that the insured's contradictory statements were exposed only 6 days before trial. Without being granted a continuance to allow for a more exhaustive investigation based upon the effects of the new facts related in the June 19th statement, we hold it constituted surprise of a prejudicial nature leaving the insurer in a precarious position as to a proper trial defense of the claim. *Page v. American Family Ins. Co.*, 42 Wis.2d 671, 168 N.W.2d 65 (1968). The insurer's request for a continuance was legitimate and timely. Therefore, we hold the trial court abused its discretion when it denied the continuance motion and a miscarriage of justice resulted.

Consequently, we exercise our power of discretionary reversal and order new trials in the interests of justice: one covering the issues of liability and negligence and the other dealing with the insurer's policy defense claiming breach of the insured's duties of notice of cooperation. These issues have not been fairly tried due to the combined effect of the insured's contradictory statements and the trial court's refusal to grant a continuance. The jury's determination of damages is not disturbed by this decision as we find that part of the trial is without the taint of the insured's fraudulent conduct as well as the abuse of discretion on the part of the trial court.

The insured's duties of notice and cooperation will not be interpreted as technical traps denying a worthy plaintiff recovery. However, recovery cannot be granted when an insured's reprehensible conduct prejudices the insurer's right to present a meritorious defense. In regard to the role of the courts in balancing the com-

peting policy considerations, we restate the perceptive observation made by this court almost fifty years ago:

"If insurers may not contract for fair treatment and helpful cooperation by the insured, they are practically at the mercy of the participants in an automobile collision." *Watkins v. Watkins,* 210 Wis. 606, 613, 245 N.W. 695 (1933).

It is imperative that the courts of this state do not tolerate the conduct of an insured who deliberately falsifies the facts to an automobile accident. There is nothing more dangerous than a policy owner who fabricates the facts as the insured is denied the opportunity to negotiate a settlement or defend the claim upon the solid ground of fact.[4] Under such circumstances, an insurer cannot raise a legitimate defense without being forced to discredit its own witness. The truth is an insurer's greatest weapon in the settlement or litigation of a claim.[5] A falsifying witness should not be allowed to deny a carrier of this right.

Our courts through the judicial process have the responsibility to search for the truth in order that we might render justice to all concerned. If we are to accept and thus condone the deceitful practice of giving false reports, we are favoring the prevaricator and the injured party at the expense of the insurance carrier. The contract of insurance by its very nature has become cloaked with a public policy interest protecting the policy owner, the injured and the general public.[6] Thus, it is the consumer, the owner and operators of automobiles,

[4] *Buffalo v. United States Fidelity & Guaranty Co.,* 84 F.2d 883, 885 (10th Cir. 1936).

[5] *Fidelity & Cas. Co. of N. Y. v. Griffin,* 178 F. Supp. 678 at 681 (S.D. Tex. 1959).

[6] *Allstate Ins. Co. v. Keller,* 17 Ill. App.2d 44, 149 N.E.2d 482, 484 (1958).

upon whom the financial burden of maintaining such contracts will fall as the cost of insurance is based upon the ratio of claims paid to the risk written. Thus, we cannot condone or support a doctrine that will ultimately make the cost of insurance protection prohibitive.[7] We must take reasonable steps to insure the fair determination of liability in all accident cases.

*By the Court.*—The judgment is reversed and cause remanded for new trials in the interests of justice on the issues of negligence, liability and policy defense.