**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 13, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP310**

STATE OF WISCONSIN

Cir. Ct. No.  2023CV424

IN COURT OF APPEALS
DISTRICT III

---

ROBERT PRUNTY,

   PLAINTIFF-APPELLANT,

V.

MAPLE VALLEY MUTUAL INSURANCE COMPANY,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Outagamie County: YADIRA REIN, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1     STARK, P.J.  In this insurance coverage dispute, Robert Prunty appeals from a judgment in favor of Maple Valley Mutual Insurance Company. After a fire originating from a woodburning unit caused damage to Prunty's home, he filed a claim with his insurer, Maple Valley.  During the subsequent

investigation of Prunty's claim, Maple Valley questioned whether Prunty had misrepresented, in his communications to establish coverage with Maple Valley, whether the woodburning unit was operational and requested that Prunty submit to an examination under oath (EUO), pursuant to the terms of the insurance policy. Rather than agreeing to the EUO, Prunty filed this breach of contract action against Maple Valley.

¶2      The parties filed cross-motions for summary judgment.  The circuit court determined that the undisputed facts demonstrated that Prunty breached the insurance contract by failing to submit to an EUO and that Maple Valley was entitled to judgment as a matter of law.

¶3      For the reasons that follow, we agree that Prunty violated the terms of his insurance policy with Maple Valley by failing to submit to an EUO before filing this lawsuit, and the fact that Prunty later sat for a deposition during this litigation did not cure the breach.  Further, assuming, without deciding, that an insured's breach of the EUO condition in an insurance policy must be material and prejudicial, we conclude that the undisputed facts establish that Prunty's breach meets that standard.  Accordingly, we affirm the circuit court's judgment.

## BACKGROUND

¶4      With the assistance of an insurance agent, Prunty purchased a homeowner's insurance policy on his home in Hortonville, Wisconsin, from Maple Valley in 2021.  There is no dispute that the policy was in effect at all times relevant to this case.  One of the questions on Maple Valley's insurance application asked whether "any building to be insured contain[ed] a woodburning unit or pellet stove (other than a masonry fireplace)?"  Prunty responded, "No," to that question on his application.

¶5    Based on the information in his application, Maple Valley issued the policy to Prunty effective September 8, 2021, subject to an inspection. An inspector visited Prunty's property on October 6, 2021. The inspector found a woodburning unit in Prunty's garage. However, the unit's exhaust piping was not connected to an opening in the garage, and the unit had personal property on it.

¶6    After the inspection, Maple Valley sent Prunty and his agent a letter and a Loss Prevention Service Form (the LPSF). The LPSF "ask[ed] that the following recommendation(s) be complied with" and directed Prunty to take two actions concerning his policy by December 19, 2021, only one of which is at issue here: "[p]ermanently remove wood stove from garage." The LPSF also requested, "[w]hen all recommendations are completed," that Prunty "please include [a] photo along with this [LPSF] to Maple Valley Mutual Insurance Company."

¶7    The next day, Prunty's agent contacted Maple Valley's loss prevention department by email. The agent relayed that the "cast iron wood stove … has cracked so is no longer useful as a wood stove" and that "[i]t has been disconnected and [Prunty] now uses it to stack stuff on as well as use[s it as] a work bench." According to the agent, Prunty "did not have it removed as it is very heavy" and "[he] is 80+ years old." The agent asked whether, under these circumstances, Prunty "need[ed] to hire someone to physically remove a cracked unusable wood stove?"

¶8    Maple Valley responded to the agent's question by permitting Prunty to leave the "wood stove … as is." However, Maple Valley instructed the agent to "inform Mr. Prunty that … he cannot reinstall the stove pipe to that stove or install any other wood stove in the garage." Prunty then returned the signed LPSF with the comment "woodstove cracked and not useable." Based on Prunty's

representations in the LPSF, Maple Valley did not cancel the policy. *See* WIS. STAT. § 631.36(2)(c) (2023-24).[1]

¶9  On January 3, 2023, there was a fire at Prunty's home, and he promptly reported the fire to Maple Valley. Maple Valley conducted an investigation of the fire, and it reported its initial findings in a January 9, 2023 letter to Prunty. That letter stated: "Based on our initial investigation to date, the fire appears to have started in and/or around the exhaust piping of a wood burning stove located in the attached garage of the insured premises." The letter further directed Prunty to the language in the policy regarding an insured's "Misrepresentation, Concealment, Or Fraud." Maple Valley explained that in reliance upon Prunty's statement in the LPSF, it did not cancel the policy pursuant to WIS. STAT. § 631.36(2)(c), but it noted that "[o]ur investigation to date indicates that the wood burning unit remained in your garage, was connected to the exhaust system, and was the source of the fire. Consequently, your statement in the [LPSF] was untrue, and that untruth contributed to the loss." Maple Valley told Prunty that it would continue to provide coverage until such time as the investigation was complete and revealed whether the loss was covered.[2]

¶10  Maple Valley conducted another inspection on February 27, 2023, and it released the scene so that Prunty could begin repairs. Afterward, Maple Valley's counsel informed Prunty's counsel by email that there were coverage concerns regarding the woodburning unit that appeared to have contributed to the fire. On March 8, 2023, Prunty submitted a "Sworn Statement in Proof of Loss."

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Both Prunty and Maple Valley subsequently retained legal counsel.

Among the questions in the proof of loss statement, Maple Valley asked: "Did you notify Maple Valley … that you were going to use a wood burner in an attached garage?" Prunty responded, "Maple Valley's records indicate that they knew about the wood burner in 2001"—20 years before Prunty applied for the policy.

¶11 Approximately one month later, Prunty's counsel requested an update. Maple Valley responded that it was seeking to have Prunty provide an EUO pursuant to the policy and sent Prunty a letter to that effect. Rather than consent to that EUO, Prunty determined that Maple Valley "was making the matter contentious," and he "authorized [his counsel] to file suit."

¶12 On May 1, 2023, Prunty filed the present lawsuit, alleging claims for breach of contract, bad faith, and statutory interest. In its answer, Maple Valley stated:

> The Policy provides no coverage for this loss because Mr. Prunty misrepresented in a written communication, within 60 days of policy inception, that the woodburning unit at his house was cracked and not usable. This misrepresentation contributed to the loss because the fire started in the woodburning unit. Accordingly, the fire loss is not covered pursuant to the misrepresentation, concealment, or fraud provision, and the failure to comply with a policy condition provision.
>
> … Maple Valley Mutual Insurance Company exercised its right to an [EUO] pursuant to the terms and conditions of the insurance contract. Mr. Prunty did not respond to said invocation and instead filed this lawsuit. This action contravenes the terms and conditions of the Policy and renders suit premature.

¶13 On September 6, 2023, Maple Valley deposed Prunty. The parties then filed cross-motions for summary judgment. In his motion, Prunty argued that Maple Valley could not deny the claim based on a misrepresentation defense

because it did not meet the requirements to rescind the policy under WIS. STAT. § 631.11(1)(a) or (4)(b).

¶14 Maple Valley's motion for summary judgment sought denial of Prunty's motion and dismissal of all his claims on the basis that his lie about the woodburning unit "trigger[ed] the misrepresentation, concealment, or fraud provision" of the policy. Maple Valley also argued that coverage was precluded because Prunty violated the EUO clause in the policy by failing to sit for the EUO prior to filing this suit. Maple Valley reiterated that it was not attempting to invoke WIS. STAT. § 631.11(4)(b) and rescind the policy.[3]

¶15 Without hearing oral argument, the circuit court entered a written order on the cross-motions for summary judgment, denying Prunty's motion and granting Maple Valley's motion. The court found that WIS. STAT. § 631.11(4)(b) did not apply because Maple Valley was not attempting to rescind the policy. Further, it determined that "[s]ince Maple Valley did not learn of the alleged misrepresentation prior to the loss, it cannot have been expected to provide notice, and Prunty cannot rely upon § 631.11(4)(b) to prevent Maple Valley from asserting a misrepresentation defense." However, the court stated that "[t]here are unresolved issues of fact regarding Prunty's intent to use the wood stove when he applied for the Maple Valley policy and when responding to the [LPSF]."

¶16 The circuit court also addressed Maple Valley's assertion that Prunty materially breached the policy by failing to sit for the EUO. It found "that Prunty

---

[3] Maple Valley also argued that Prunty's bad faith and statutory interest claims should be dismissed "because Maple Valley's denial was objectively reasonable as a matter of law." Because the circuit court dismissed Prunty's claims in their entirety, the court did not address Maple Valley's alternative argument regarding these extra-contractual claims.

was obligated under the insurance policy to submit to an [EUO]" and that "[h]is decision to commence litigation instead was a breach of the insurance contract." According to the court, "[t]he fact that he later gave sworn testimony at a deposition does not cure that breach." Thus, the court granted summary judgment in favor of Maple Valley on all of Prunty's claims and dismissed the case. Prunty appeals.

## DISCUSSION

¶17 In this appeal, Prunty presents three arguments for our consideration. First, he argues that the LPSF did not meet the criteria under WIS. STAT. § 631.11(1)(a)3.[4] "to affect Maple Valley's obligations under the policy" "because it is clear that the parties were not negotiating for the contract and because the communications failed to convey that removal of the wood stove was a requirement for coverage." Second, Prunty asserts that his failure to sit for the EUO was not a material or prejudicial breach of the policy because he answered Maple Valley's questions under oath in a subsequent deposition. And third, he contends that the bad faith and statutory interest claims must be reinstated.

¶18 For the reasons that follow, we conclude that Prunty was required by the terms of the policy to sit for an EUO and that his failure to do so *before* commencing litigation was a material and prejudicial breach of the insurance

---

[4] WISCONSIN STAT. § 631.11(1)(a)3. states, in pertinent part, that "[n]o statement, representation or warranty made by a person other than the insurer or an agent of the insurer in the negotiation for an insurance contract affects the insurer's obligations under the policy unless it is stated in" "[a] written communication provided by the insurer to the insured within 60 days after the effective date of the policy."

contract. Because Prunty breached his obligations under the policy, the circuit court properly granted summary judgment to Maple Valley.[5]

¶19 We review a circuit court's grant of summary judgment de novo.[6] *Munger v. Seehafer*, 2016 WI App 89, ¶46, 372 Wis. 2d 749, 890 N.W.2d 22. The summary judgment standard is well known and provides that judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶20 "The interpretation of an insurance policy [also] presents a question of law that we review de novo." *Marotz v. Hallman*, 2007 WI 89, ¶33, 302

---

[5] Given our conclusion on the EUO issue, we do not further address Prunty's additional arguments. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (concluding that we need not address all issues when the resolution of one of the issues is dispositive); *see also Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶65, 334 Wis. 2d 23, 798 N.W.2d 467 ("[S]ome breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured.").

[6] As an initial matter, we note that Prunty argues that the circuit court erred by relying on *Johnson v. American Family Mutual Insurance Co.*, No. 02-1596, unpublished slip op. (WI App Mar. 25, 2003), to reach its decision on summary judgment. While WIS. STAT. RULE 809.23(3) is located in the subchapter of WIS. STAT. ch. 809 titled "Civil Appeal Procedure in Court of Appeals," RULE 809.23(3)(a) provides that "[a]n unpublished opinion may not be cited in *any court* of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case, and except as provided in par. (b)," which pertains to authored opinions. RULE 809.23(3)(a), (b) (emphasis added). *Johnson* is a per curiam opinion and, as such, "is not an authored opinion." *See* RULE 809.23(3)(b). Therefore, the court erred by relying on *Johnson*.

Given that our review of the circuit court's decision on summary judgment is de novo, however, the court's error in this regard is "irrelevant," and we will not further address Prunty's argument. *See Alliance Laundry Sys. LLC v. Stroh Die Casting Co.*, 2008 WI App 180, ¶25, 315 Wis. 2d 143, 763 N.W.2d 167 ("Because our review is de novo, any errors the [circuit] court may have made in granting its judgment are irrelevant on appeal.").

Wis. 2d 428, 734 N.W.2d 411. "General principles of contract construction control the interpretation of an insurance contract." *Id.*, ¶34. Our objective is to give effect to the parties' intent. *Id.* To that end, "[i]nsurance polices are construed as they would be understood by a reasonable person in the position of the insured." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65.

¶21    Maple Valley's policy contains a section titled "What Must be Done in Case of Loss or Occurrence." This section includes the EUO provision, which provides as follows:

> The following duties apply when there is loss to covered property. These duties must be performed by "you," "your" representative, an "insured" seeking coverage, or the representative of an "insured" seeking coverage.
>
> "We" are not obligated to provide the coverages described in this policy if these duties are not performed.
>
> ….
>
> g. Examination Under Oath—As often as "we" reasonably request, all "insureds" must:
>
> 1) submit to examination under oath in matters that relate to the loss or claim; and
>
> 2) sign such statement made under oath.
>
> If more than one person is examined, "we" have the right to examine and receive statements separately from each person and not in the presence of other "insureds."

¶22    In this case, it is undisputed that Maple Valley exercised its right to an EUO under the policy, and Prunty subsequently failed to sit for the EUO. As Maple Valley correctly argues, "[t]he only limiting language is that the EUO must relate to the loss or claim." Prunty did not, and does not on appeal, argue that Maple Valley's exercise of its right to an EUO was defective or that Maple Valley

9

had no relevant questions to ask related to the loss or claim when it requested the EUO. As noted above, however, Prunty did submit to Maple Valley's requested deposition *after* Prunty commenced litigation. By doing so, Prunty asserts that he "effectively complied" with the policy's EUO provision.

¶23    This court has previously held that cooperation clauses in insurance contracts "put[] the insured on notice that the insured must respond to discovery requests in the coverage proceeding." *Link v. Link*, 2022 WI App 9, ¶30, 401 Wis. 2d 73, 972 N.W.2d 630. We have also established that when an insured refuses to answer material questions posed during an insurance claim investigation, he or she breaches the insurance contract. *See State Farm Fire & Cas. Ins. Co. v. Walker*, 157 Wis. 2d 459, 469, 459 N.W.2d 605 (Ct. App. 1990). There is, however, no published Wisconsin state court decision addressing whether later deposition testimony in litigation can cure an insured's breach of an insurance policy by failing to comply with an EUO request.

¶24    Prunty cites *Link* in support of his position that appearing at a deposition *after* filing suit substantially complies with the EUO provision in the policy. There, the issue concerned liability insurance coverage for claims asserted by third parties based on Jay Link's alleged posting of sexually explicit photos of the third parties online. *Link*, 401 Wis. 2d 73, ¶¶3-4. The insurer sought a determination of coverage within the lawsuit, and Link refused to respond to discovery requests, instead invoking his Fifth Amendment privilege to avoid self-incrimination. *Id.*, ¶5. The insurer sought summary judgment, arguing that, pursuant to the policy's terms, "Link was required to cooperate with the coverage investigation and not conceal or misrepresent any material facts." *Id.*, ¶6. The circuit court agreed and granted summary judgment to the insurer. *Id.*

¶25 On appeal, we concluded that "the undisputed facts show that Link violated the concealment and cooperation clauses of his policy and that these contractual breaches are grounds for coverage denial." *Id.*, ¶10. In particular, we agreed that "without Link's discovery responses," the insurer "was prejudiced in its ability to evaluate coverage. That is, in the face of Link's noncooperation, there was no obvious or reasonable way for [the insurer] to determine if the policy covered any of [the third parties'] claims." *Id.*, ¶34. Ultimately, we explained that "the decision to invoke the Fifth Amendment does not have to be—and sometimes should not be—consequence-free." *Id.*, ¶32.

¶26 In *Link*, we relied heavily on *Walker*, a case Maple Valley relies on for support. *See Link*, 401 Wis. 2d 73, ¶¶11-20. In *Walker*, one of the issues on appeal was whether an insured could refuse to answer certain "questions during an investigation of an insurance claim by invoking his [F]ifth [A]mendment privilege and objecting to the questions as immaterial." *Walker*, 157 Wis. 2d at 463. The insurer had exercised its right to an EUO while investigating a suspicious fire. *Id.* Jimmy Walker—one of the insureds—appeared for an EUO while in jail, but he refused to answer certain questions posed by the insurer's counsel, stating that "they were immaterial to the insurance policy and … the [F]ifth [A]mendment protected his refusal to answer possibly incriminating questions." *Id.* at 463-64.

¶27 As relevant here, after litigation had commenced and Walker's criminal trial in Colorado had concluded, Walker offered to appear at another EUO to answer the insurer's questions. *Id.* at 468. We concluded that Walker's belated offer was insufficient because "[a]n offer to answer questions about a fire after the insurance carrier has instituted a court action is too late to be meaningful to the insurance company." *Id.* We affirmed the circuit court's summary judgment dismissal of the insureds' claims. *Id.* at 467.

¶28 Prunty acknowledges that "the facts in *Link* do not directly mirror those in this matter," but he explains that "he cited *Link* to make the distinction that he did not fail his obligations and Maple Valley was not prejudiced in its investigation." Further, Prunty notes that he "did not force Maple Valley to instigate suit to declare its [coverage] determination valid, rather, [*he*] initiated suit and was transparent during the process that suit was forthcoming and that he would answer Maple Valley's questions under oath."

¶29 We are unpersuaded by Prunty's arguments, and we disagree that Prunty's postsuit deposition obviated his obligation to sit for an EUO under the policy. As Maple Valley argues, the insurance contract, by its plain language, required Prunty to provide an EUO as many times as reasonably requested by the insurer, and while there was no timing requirement, the policy clearly states that the insured is to do this when requested and as often as requested. Importantly, the policy does not state that depositions may be substituted for EUOs. Further, EUOs and depositions are materially different. EUOs are contractual, while depositions arise out of civil procedure. The purpose of the EUO provision in the policy is to permit Maple Valley to conduct an investigation prior to litigation to determine if there is coverage for an insured's claim under the policy and to grant or deny the claim. In contrast, a deposition is a discovery mechanism in litigation, after an insurer has denied a claim, that is subject to the provisions of WIS. STAT. ch. 804.

¶30 Rather than allow Maple Valley to continue its investigation of the claim—as Maple Valley told Prunty it needed to do in its January 9, 2023 letter—Prunty essentially became impatient with Maple Valley's investigation, and he decided to file this suit rather than comply with the terms of the insurance contract, thereby thwarting Maple Valley's investigation and coverage

determination. The latter is particularly important where, as here, Maple Valley's inability to make a coverage determination subjected it to the risk of a bad faith claim. As Maple Valley argues, it "owes a duty to appropriately investigate Prunty's claim," and it "risked a substantial bad faith judgment if it had made a rash denial without fully investigating all of the facts." *See Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 692, 271 N.W.2d 368 (1978). Thus, even though Maple Valley's letter to Prunty suggested its concern about coverage based on Prunty's prior representations about the woodburning unit, the letter made clear that it was not yet denying coverage and was appropriately conducting a full investigation—which it was both entitled and obligated to do—before it made any coverage determinations.

¶31 We therefore conclude that this court's decision in *Walker* is most analogous to the present case. There, after first refusing to answer certain questions at an EUO, Walker offered to answer the insurer's questions at a later EUO, but we determined that his offer—made after the insurance carrier had filed a court action—came "too late to be meaningful to the insurance company." *Walker*, 157 Wis. 2d at 468. Based on the *Walker* court's reasoning, if an insurer can rely on an insured's refusal to answer certain questions at an EUO to deny a claim, then Maple Valley could rely on Prunty's refusal to appear entirely at an EUO to deny his claim. In reply, Prunty attempts to distinguish this case from *Walker* by arguing that he "did not fail to answer any of Maple Valley's questions" and did so in a much timelier manner than the insured in *Walker*. However, nothing in the court's decision in *Walker* suggests that a shorter delay in answering the insurer's questions *after* the suit had been filed would have impacted the court's decision.

¶32 Finally, Prunty asserts that even if he did breach the terms of the insurance contract by not sitting for the EUO, any breach was immaterial and did not prejudice Maple Valley. According to Prunty, his breach of the policy's terms was not material because he "did not fail to answer Maple Valley's questions and he did not fail to provide them under oath, as is required under the EUO provision." While he "may not have provided the testimony as promptly as Maple Valley had wished," Prunty contends that the evidence demonstrates that he "only sought to keep the matter moving" because Maple Valley had already "made it abundantly clear that coverage was disputed prior to requesting the EUO."

¶33 Initially, we note that the circuit court specifically found that Prunty materially breached the terms of the insurance policy and further concluded that the fact that Prunty later gave sworn testimony at a deposition did "not cure that breach." Maple Valley, however, appears to suggest that a material breach is not required, stating that "*Walker* never holds that an insured's breach of the EUO condition must be material in order for the insured to lose coverage; however, *Walker* does hold that questions must be material to the claim." *See Walker*, 157 Wis. 2d at 469; *but see Dietz v. Hardware Dealers Mut. Fire Ins. Co.*, 88 Wis. 2d 496, 503, 276 N.W.2d 808 (1979) ("Notwithstanding proof of a contractual breach, in Wisconsin an insurer must also prove the breach is material and prejudicial."); *Management Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996) ("It is well established that a *material* breach by one party may excuse subsequent performance by the other." (emphasis added)). For purposes of this decision, we will assume, without deciding, that a

breach of the insurance contract with regard to the EUO provision must be both material and prejudicial. We conclude that standard has been met here.[7]

¶34 EUO provisions in insurance contracts serve important purposes. As the United States Supreme Court has explained,

> The object of the provisions in the policies of insurance, requiring the assured to submit himself to an [EUO] … was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims.

*Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94-95 (1884); *see also* JORDAN R. PLITT, ET AL., 13A COUCH ON INS. § 196:3 (3d ed. 2024) (explaining that EUO "provisions are designed to make available to the insurer additional information … to assist in the evaluation of a claim and protect against false claims, so that the insurer can decide whether to pay the claim without the necessity of litigation" (footnote omitted)).

¶35 Given these purposes, it seems antithetical to suggest that an insured can merely substitute a postsuit deposition for an EUO and thereby satisfy the EUO provision in the insurance contract. This proposition is especially true where the contract specifically states that "[t]hese duties"—of which an EUO is designated as a duty—"*must* be performed by" an insured and that the insurer "[is] not obligated to provide the coverages described in this policy if these duties are

---

[7] Our decision that a material and prejudicial breach occurred here is supported by the conclusions of courts in other jurisdictions. *See, e.g.*, *Roller v. American Mod. Home Ins. Co.*, 484 S.W.3d 110, 117 (Mo. Ct. App. 2015); *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 924-25 (7th Cir. 2006); *Ellis v. Safety Ins. Co.*, 672 N.E.2d 979, 985 (Mass. App. Ct. 1996); *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So. 2d 300, 303 (Fla. Dist. Ct. App. 1995).

not performed." (Emphasis added.) Furthermore, if Prunty can merely substitute a postsuit deposition for the EUO, the EUO policy provision is essentially rendered meaningless. Thus, we agree with the circuit court's determination that Prunty's failure to submit to an EUO was a material breach of the policy.

¶36    As to prejudice, we agree with Maple Valley that, absent Prunty's EUO, it was unable to "fully assess its coverage position pre-suit" and was, therefore, prejudiced in its ability to evaluate coverage. Maple Valley argues that

> because Maple Valley's communications with Prunty regarding the details of his woodburning unit were through the agent, Maple Valley did not know if Prunty would claim that he did not know or did not understand that he was not supposed to use his woodburning unit. Nor did Maple Valley know the basis for Prunty to believe that Maple Valley knew of his woodburning unit two decades before he purchased insurance from Maple Valley.

As Prunty admitted in his brief, the record is clear that Maple Valley had not yet denied coverage when Prunty filed this lawsuit, as Maple Valley's answer to the complaint "provided for the first time that Mr. Prunty's claim was being denied." Maple Valley agrees, stating, "This is true and also makes perfect sense because Maple Valley was still investigating the claim up until the time that Prunty filed suit." Therefore, Prunty's failure to sit for the EUO prevented Maple Valley from completing its investigation and making its own coverage determination. Then, as a result of Prunty's premature filing of this lawsuit, Maple Valley was required to provide coverage to Prunty while it argued about that coverage (without first reaching its own conclusion), all while expending the extra costs of litigation. Furthermore, as discussed above, Maple Valley was also subject to Prunty's bad faith claim. *See supra* ¶30. Under these circumstances, there is no question that Maple Valley suffered prejudice.

¶37     Therefore, based on the undisputed material facts, we conclude that Prunty breached his insurance policy with Maple Valley by failing to submit to an EUO and, instead, commencing this lawsuit.  Under these circumstances, Prunty's breach was both material and prejudicial.  Accordingly, we affirm the circuit court's judgment in favor of Maple Valley.

    *By the Court.*—Judgment affirmed.

    Recommended for publication in the official reports.